IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| STEVE FANADY,<br><br>    Plaintiff,<br><br>vs.<br><br>THOMAS DART as Sheriff of Cook County, Illinois,<br><br>    Defendant. | No. 22cv4180<br><br>Honorable Andrea R. Wood |

## DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(B)(1) AND 12(B)(6)

Defendant, COOK COUNTY SHERIFF THOMAS J. DART ("Sheriff Dart" or "Defendant"), by his counsel, KIMBERLY M. FOXX, State's Attorney of Cook County, and through her Assistant State's Attorneys, Jessica L. Wasserman and Joseph A. Hodal, move to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In support thereof Defendant states as follows:

### INTRODUCTION

This case arises from Plaintiff's failure to comply with the Cook County Circuit Court's Judgment of Dissolution of Marriage. Plaintiff asserts that the court ordered him to pay his former spouse 120,000 shares of CBOE stock or, in the alternative, pay her $10 million dollars. *See Dkt.*

*1, Compl.,* at ¶ 7; *Body Attachment*, Exh. A, at 2[1]. Plaintiff failed to comply with that order. *See Dkt. 1*, *Comp.,* at ¶ 8. After a hearing, the court subsequently held him in civil contempt of court and ordered he be "committed to the Cook County Jail, there to remain" until he complied with the court's order. *Order of Adjudication of Indirect Civil Contempt And / Or Order of Commitment*, Exh. B; *see also Body Attachment*, Exh. A, at 2.

Plaintiff challenged the conditions and method of his confinement in state court. Specifically, on July 13, 2022, he filed in the Divorce action an "Emergency Verified Motion to Allow Sheriff of Cook County to Put Respondent on Electronic Monitoring/Home Detention Because of Illegal Conditions of Detention." *See* Exh. C. In that motion, he argued that his conditions of confinement mandated his release on house arrest. *Id.* at ¶ 6–7. Specifically, he asserted that he was being held in "solitary confinement;" lacked access to clean clothing, exercise, television, reading material, grievance forms, and time outside his cell; and that his cell temperature was 60 degrees. *Id.* at ¶ 6. The state court deemed that the motion was not an emergency and ordered briefing. *See July 21, 2022 Order Entered by Electronic Means*, Exh. D. at ¶ 1–3. The matter is currently pending in state court with a hearing set for September 28, 2022.

---

[1] Even if this court determines that Plaintiff's arguments related to *Younger* abstention and the *Rooker-Feldman* doctrine should be considered under FED. R. CIV. P. 12(b)(6), this court may take judicial notice of outside "matters of public record" without converting a motion for failure to state a claim into a motion for summary judgment if they are "not subject to reasonable dispute" and "either generally known within territorial jurisdiction or capable of accurate and ready determination through sources whose accuracy cannot be questioned." *Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012). Accordingly, this Court may take judicial notice of court documents. *Id.* at 774 (citing *Henson v. CSC Credit Servs.,* 29 F.3d 280, 284 (7th Cir. 1994)). Thus, this Court may consider the attached state court filings in determining whether Plaintiff has stated a claim, including the Body Attachment (Exh. A); Order of Adjudication of Indirect Civil Contempt And/Or Order of Commitment (Exh. B), Plaintiff's Emergency Verified Motion to Allow Sheriff of Cook County to Put Respondent on Electronic Monitoring/Home Detention Because of Illegal Conditions of Detention (Exh. C); the July 21, 2022 Order Entered by Electronic Means (Exh. D); Plaintiff's Motion to Purge or Vacate Contempt (Exh. E); and the August 12, 2022 Order Entered by Electronic Means (Exh. F.)

*Id.* at ¶ 8. Plaintiff also filed a "Motion to Purge or Vacate Contempt" in state court on July 28, 2022. Exh. E. The Court similarly held that motion was not an emergency and ordered briefing, with Petitioner's response due September 15, 2022. *See August 12, 2022 Order Entered by Electronic Means*, Exh. F.

Plaintiff now raises his conditions-of-confinement challenges before this Court without addressing how federal intervention would undermine fundamental notions of comity and federalism. Specifically, he does not address the effect his request to be placed on Electronic Monitoring will have on the ongoing state contempt proceedings. *See Younger v. Harris*, 401 U.S. 37 (1971). Nor does he justify asking this Court to review the earlier state court judgment placing him in custody after two evidentiary hearings. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); Exh. B.

Rather, Plaintiff rehashes many of his state-court allegations in his complaint. He notes that he was originally housed in Division 8 but was relocated "after a few days" after complaining that he could not be housed with criminal detainees pursuant to 730 ILCS 125/11 and 20 Ill. Admin Code 701.7(4)(A). *Dkt. 1*, *Compl.* at ¶ 12. He was then placed in the Residential Treatment Unit ("RTU") but was relocated approximately 26 days later after complaining of conditions there. *Id.* at ¶ 16. He states that, while at the RTU, he did not have lights in his cell; lacked clean underwear and clothing; had no exercise or time outside his cell; and "no medical care for complications resulting from his recent double hip replacement surgery." *Id.* at ¶ 15. He also alleges that the temperature was "at or less than 60 degrees Fahrenheit" and that he lacked access to reading material, television, and commissary. *Id.*

Plaintiff asserts that he is now being housed in Division 2 in a "dormitory style room" large enough to house thirty inmates. *Id.* at 16. He notes that he is housed alone—a situation he describes

as "solitary confinement"— in a cell "covered with rat feces" and "infested with insects." *Id.* at ¶ 17. He states that he is being "deprived of recreation or opportunities for physical activity" and "is not allowed any time outside of his cell." *Id.* (He simultaneously acknowledges, however, that he has been given five recreation periods "in an interior area near his cell. *Id.* at ¶ 17, n. 2). He further alleges that he lacks adequate access to medical treatment and medications, and that he cannot use the bed or toilet in his cell due to his debilitating physical condition. *Id.* at ¶ 25. Finally, he claims he has "no access to books, magazines, or reading materials," while simultaneously acknowledging that he was given a book. *Id.*

As a result of these conditions, Plaintiff now brings a claim under 42 U.S.C. § 1983 against Sheriff Dart in his official capacity. *Dkt. 1, Compl.* at ¶ 6. He alleges that the Sheriff has a policy of separating civil detainees from those charged with a criminal offense, but points to no other official policies impacting his conditions of confinement. *Id.* at ¶ 10 (citing 730 ILCS 125/11 and 20 Ill. Admin. Code 701.7). In his prayer for relief, Plaintiff requests that he be placed either on Electronic Monitoring[2] or a new facility, as well as monetary damages. *Id.* at ¶ 23.

---

[2] Regardless of the merits of Plaintiff's constitutional claim, Defendant does not have the power to put him on Electronic Monitoring. Plaintiff contends that Defendant has such discretion under 730 ILCS 5/5-8A. *Dkt. 1, Compl.* at ¶ 22. But Article 8A., Electronic Monitoring and Home Detention, is located in Chapter V., Sentencing. Plaintiff is a civil contemnor detainee in that he "carries the keys of his prison in his own pocket." *Gompers v. Bucks Stove & Range Co.*, 221 U.S. 418, 442 (1911). A civil contempt sanction is remedial and designed to coerce a future act for the benefit of the complainant. *See Int'l Union v. Bagwell*, 512 U.S. 821, 827–28 (1994). Thus, although Plaintiff is detained, he is not "sentenced under a provision of law that requires the sentence to include a minimum term of imprisonment…". 730 ILCS 5/5-8A-8. Rather, Plaintiff was detained with the provision that he could be released upon payment. Nor electronic monitoring would be appropriate under 725 ILCS 5/110-10(b)(14), as this section is operated as a pretrial special condition of bond and is not available to civil detainees.

## STANDARD OF REVIEW

### FED. R. CIV. P. 12(b)(1)

A motion to dismiss for lack of subject matter jurisdiction is properly brought under Rule 12(b)(1). The court may "look beyond the pleadings and view any evidence submitted to determine if subject matter jurisdiction exists." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015); *see also Capital Leasing Co v. F.D.I.C.*, 999 F.2d 188, 191 (7th Cir. 1993) (explaining that court may "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue"). Challenges based upon the *Rooker-Feldman* doctrine and *Younger* abstention are properly considered under Rule 12(b)(1). *See Keith v. Wis. Dep't of Workforce Dev.*, No. 21-2398, 2022 U.S. App. LEXIS 6357, *5 (7th Cir. Mar. 11, 2022) (explaining that district court properly dismissed plaintiff's complaint under Rule 12(b)(1) where *Rooker-Feldman* barred claims); *Ali Nadzhafaliyez v. Hardy*, 403 F. Supp. 3d 663, 667 (N.D. Ill. 2019) (explaining that motion to dismiss on abstention grounds "fits more comfortably under Rule 12(b)(1)")(quoting *Bolton v. Bryant*, 71 F. Supp. 3d 802, 808 n. 1 (N.D. Ill. 2014)).

### FED. R. CIV. P. 12(b)(6)

This Court should grant a Rule 12(b)(6) motion to dismiss if the well-pleaded allegations of the complaint, assumed as true, do not "plausibly suggest an entitlement to relief." *McCauley v. City of Chi.*, 671 F.3d 611, 617–18 (7th Cir. 2011). The Court must draw all reasonable inferences in the light most favorable to the Plaintiff. *Gutierrez v. Peters*, 111 F.3d 1364, 1369 (7th Cir. 1997). However, the plaintiff's factual allegations must plausibly suggest the plaintiff is entitled to relief, raising that possibility "above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S 544, 555 (2007). Furthermore, a "plaintiff's obligation to provide the 'grounds' of her 'entitlement for relief' requires more than labels and conclusions, and a formulaic recitation of the

elements of a cause of action will not do." *Id*. The pleading standard in Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly,* 550 U.S. at 555). Rather, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Mere conclusory statements are insufficient. *Id.* at 678.

## ARGUMENT
### FED. R. CIV. P. 12(b)(1)

**I. PLAINTIFF'S COMPLAINT IS BARRED UNDER THE *YOUNGER* ABSTENTION DOCTRINE AND THE *ROOKER-FELDMAN* DOCTRINE**

**a. *Younger* abstention bars consideration of Plaintiff's claims**

Abstention is appropriate under *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021). Although *Younger* abstention was first articulated in relation to state criminal proceedings, it "is also fully applicable to civil proceedings in which important state interests are involved." *Moore v. Sims*, 442 U.S. 415, 423 (1979); *see also Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (explaining *Younger* abstention may apply to civil enforcement proceedings). In determining whether abstention is appropriate, the court looks to "1) the judicial…state proceedings must be on-going; (2) the proceedings must implicate important state interests; and 3) there must be an adequate opportunity in the state court proceeding to raise constitutional challenges." *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996).

Each factor is present here. First, there is an ongoing state proceeding. Specifically, enforcement proceedings of a state court judgment in conjunction with an order of civil contempt

6

are underway and predate this motion for a Temporary Restraining Order. Plaintiff is currently attempting to vacate his contempt order in state court. *See generally* Exhs. E, F. And Plaintiff has a pending motion in state court seeking the same relief he seeks here. *See generally* Exhs. C, D. Thus, it is clear there is an ongoing state judicial proceeding.

In accordance with the second factor, enforcement of state court judgments and contempt proceedings are clear examples of civil proceedings which implicate vital state interests. The Supreme Court has applied *Younger* in the context of contempt proceedings. *See Juidice v. Vail*, 430 U.S. 327, 336 (1977) (holding that *Younger* applies to pending state court contempt proceedings); *Moore v. Sims*, 422 U.S. 415, 423 (1979). In *Juidice v. Vail*, the Supreme Court required the federal district court to abstain because it found that the "State's interest in the contempt process, through which it vindicates the regular operation of its judicial system, so long as that system itself affords the opportunity to pursue federal claims within it, is surely an important interest." *Id.* at 335. As in *Juidice*, the instant case involves important state interests and warrants federal abstention.

Finally, there was an adequate opportunity to raise constitutional arguments in the state court proceedings. To invoke *Younger* abstention, parties "need be accorded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings." *Juidice*, 430 U.S. at 337. Plaintiff raised substantially the same constitutional arguments he raises here before the state court judge in his still pending "Emergency Verified Motion to Allow Sheriff of Cook County to Put Respondent on Electronic Monitoring/Home Detention Because of Illegal Conditions of Detention." *See* Exh. C.

**b. This court lacks jurisdiction under the *Rooker-Feldman* doctrine.**

Alternatively, Plaintiff's request for a temporary restraining order is barred by the *Rooker-Feldman* doctrine because it is essentially a collateral attack on the state court's contempt and body attachment orders. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). District courts have no jurisdiction to adjudicate "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). This extends to claims that "do not on their face require review of a state court's decision" but are "closely enough related to a state-court judgment." *Mains v. Citibank*, 852 F.3d 669, 675 (7th Cir. 2017). The *Rooker-Feldman* doctrine applies to review of state contempt orders, *see Homola v. McNamara*, 59 F.3d 647, 649–50 (7th Cir. 1995) (concluding that *Rooker-Feldman* barred challenge to state-court contempt order), as well as body attachments, *see Chatman v. Weltman*, 325 F. Supp. 3d 875, 883 (N.D. Ill. 2018) (Castillo, J.) (explaining federal court could not consider claims that rested on presumption warrant issued by state court was invalid).

Plaintiff is inviting the district court to review his state court contempt order and body attachment. Although Plaintiff asserts that his motion for a Temporary Restraining Order is not "an attack, collateral or otherwise" on a state court judgment, *See Dkt. 4, Memo in Support of Pl. Motion for Temporary Restraining Order, at ¶ 2*, the relief he seeks implies otherwise. Plaintiff requests, among other things, that Defendant place him on electronic monitoring. However, the civil contempt order provides that Plaintiff "[i]s ordered committed to the Cook County Jail, there to remain until he shall have purged himself of contempt…" Exh. B. The order was entered after

a full evidentiary hearing[3] and makes no mention of electronic monitoring or any other form of custody. Rather, the order explicitly states that he is committed to *the Cook County Jail*. Exh. B. Similarly, Plaintiff's body attachment states the Sheriff "may release the Respondent after he shall deposit $10,000,000 (Ten Million Dollars) into escrow with the Sheriff or the court." Exh. A. Thus, Plaintiff's request that Defendant disregard the court's orders by letting him out of jail through electronic monitoring and changing the stated terms for his release from custody "is tantamount to vacating the state judgment." *Taylor v. Fannie Mae*, 374 F.3d 529, 533 (7th Cir. 2014). Because it is clear that the relief Plaintiff now seeks is "inextricably intertwined" with the state court's adjudication of the contempt order and body attachment, *Brown v. Bowman*, 668 F.3d 437, 441 (7th Cir. 2012), Plaintiff's motion should be denied.

**FED. R. CIV. P. 12(B)(6)**

**II. PLAINTIFF FAILS TO PLEAD AN OFFICIAL CAPACITY CLAIM AGAINST SHERIFF DART**

Plaintiff's claim against Sheriff Dart in his official capacity must meet the requirements of *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). *See See Hafer v. Melo*, 502 U.S. 21, 25 (1991) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a party in the violation of federal law.") This requires a showing that an "official policy…caused the constitutional deprivation." *Glisson v. Ind. Dep't of Corr.*, 849 F.3d 372, 379 (7th Cir. 2017).

Plaintiff fails to state a claim because he does not point to any policy which caused a constitutional deprivation. He criticizes Defendant's implementation of 730 ILCS 125/11 and 20 Ill. Admin Code 701.7, which requires it to separate civil and criminal detainees. *Dkt. 1.*, *Compl.*,

---

[3] The Body Attachment Order specifically states the circuit court "conducted a full evidentiary hearing on February 09, 2021…and further hearing on June 14, 2022." Exh. A. After such hearings the only method of release the court ordered was the payment of the $10 million purge amount. *Id.*

9

at ¶ 10. However, he does not explain how this policy is related to his complaints, particularly those related to the cleanliness of his cell, lack of recreation, and inadequate medical care. Accordingly, he fails to satisfy the "rigorous causation standard" requiring "a direct causal link between the challenged municipal action and the violation of [the plaintiff's] constitutional rights." *First Midwest Bank v. City of Chicago*, 988 F.3d 978, 987 (7th Cir. 2021).

Plaintiff's only complaint even arguably related to this policy is that he is housed alone. *Dkt. 1.*, *Compl.,* at ¶ 14. He contends that Defendant's policy of separating civil and criminal detainees has caused unconstitutional results as applied to him, namely, his "being kept i[n] solitary confinement, twenty-four (24) hours a day, (7) seven days a week." *Dkt. 1.*, *Compl.,* at ¶ 13. But "a plaintiff seeking to hold a municipality liable for a facially lawful policy generally must prove a prior pattern of similar constitutional violations resulting from the policy." *Dean v. Wexford Health Sources, Inc.,* 18 F.4th 214, 236 (7th Cir. 2021) (citing *City of Okla. City v. Tuttle*, 471 U.S. 808, 824 (1985)). Plaintiff does not argue that the policy of separating civil and criminal detainees, as required by 730 ILCS 125/11 and 20 Ill. Admin Code 701.7, is facially unconstitutional. Thus, he must show "it was obvious" that Defendant's separation of civil and criminal detainees "would lead to constitutional violations and that the municipality consciously disregarded those consequences." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021). Plaintiff has failed to explain how this is the case.

Regardless, even if this Court were to find the policy of separating civil and criminal detainees demonstrates municipal fault, Plaintiff has not pleaded facts demonstrating that "the alleged conditions [are] serious enough to amount to a constitutional deprivation." *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). This requires a showing that his condition is "objectively serious," *Jones v. Williams*, 2021 U.S. Dist LEXIS 145363, *27 (N.D. Ill. 2021) (Seeger, J.). Although Plaintiff

asserts that he is unconstitutionally being held in "solitary confinement," he does not explain what he means by that term. "Solitary confinement" is not synonymous with being housed alone. *See Kervin v. La Clair Barnes*, 787 F.3d 833, 837 (7th Cir. 2015) ("Segregation isn't just separating a prisoner from one or several other prisoners.") Rather, solitary confinement refers to a disciplinary measure, and Plaintiff has not alleged that he has been disciplined nor that his current placement was intended to be punitive. *See United States v. Jemine*, 2021 U.S. Dist. LEXIS 245228, *43 (N.D. Ill. 2021) (Fuentes, J.) (explaining no need to determine whether detainee's description was accurately described as "solitary confinement" where his segregation was "intended as punishment and functions as punishment"). Nor does Plaintiff's situation resemble cases in which courts have reviewed constitutional claims related to segregation or solitary confinement. *See Pearson v. Ramos*, 237 F.3d 881, 883 (7th Cir. 2001) ("Prisoners in the segregation unit are confined to their cells, which are small (9 feet by 12 feet) and, because the cell contains a toilet and sink as well as a bed, cramped."); *see also Marion v. Columbia Corr. Inst.*, 559 F.3d 693, 698 (7th Cir. 2009) (explaining that "duration *and* conditions of the segregation must be considered in the due process analysis"). Here, although Plaintiff is currently housed alone, by his own account it is in a unit large enough for thirty detainees. *See Dkt. 1, Compl.* at ¶ 16. Any conclusory statements that he is unconstitutionally being held in "solitary confinement" are insufficient to state a claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.")

Nor would Plaintiff's other allegations give rise to a constitutional violation, even if they could be linked to an official policy. As to his current conditions, Plaintiff contends that his living quarters contain feces and insects; however, "alleging the mere presence of a laundry list of pests, without more, is not sufficient to state a constitutional claim." *Smith v. Dart*, 803 F.3d 304, 312

(7th Cir. 2015) (evaluating Fourteenth Amendment claim of pretrial detainee). Plaintiff fails to explain "how extensive the infestations are and how the pests affect him," and does not assert that "pests have ever come into contact with his person or his property, or that he's been bitten or stung or otherwise suffered physical or psychological harm." *Id.* He next alleges that he is allowed only occasional indoor exercise, but "there is a significant difference between a lack of outdoor recreation and an inability to exercise." *Smith*, 803 F.3d at 313. Plaintiff "does not allege that his movements are restricted to the point that he is unable to exercise inside his cell or in jail common areas." *Id*. Rather, he indicates that he is housed in a large cell and has had opportunities to exercise in a unit near his cell. This is distinguishable from cases "[w]here movement is denied and muscles are allowed to atrophy." *Id.* (quoting *French v. Owens*, 777 F.2d 1250, 1255 (7th Cir. 1985)). Finally, he states he lacked access to clean clothing and laundry, but he does not indicate that he suffered any harm as a result. *See Moss v. DeTella*, 1997 U.S. Dist. LEXIS 14638, *4 (N.D. Ill. 2010) (Denlow, J.) (lack of clean clothes and bedding for 111 days did "not rise to the level of a constitutional violation" where Plaintiff alleged no injury).

Nor were Plaintiff's conditions sufficiently serious to amount to a constitutional violation during his 26 days at the RTU. He alleges that his cell temperature in the RTU was "at or less than 60 degrees Fahrenheit." But he does not allege that the temperature was so extreme as to subject him to a substantial risk of harm, and an allegation that temperatures were merely uncomfortable is insufficient to state a claim. *See Rogers v. Scott*, 695 Fed. Appx. 155, 158 (7th Cir. 2017) ("To succeed on a claim of deliberate indifference under the Due Process Clause of the Fourteenth Amendment, [plaintiffs] needed evidence demonstrating that…they were exposed to extreme cell temperatures that caused severe discomfort or created a risk of harm.") He also fails to describe the light in his cell or allege facts indicating he suffered an extreme deprivation from any lack of

lights. *See Vasquez v. Frank*, 290 Fed. Appx. 927, 929 (7th Cir. 2008) ("Extreme deprivations are required to make out a conditions-of-confinement claims, and 24-hour lighting involving a single, 9-watt fluorescent bulb does not objectively constitute an extreme deprivation.") (internal quotations omitted).

Finally, Plaintiff has not stated a constitutional deprivation occurred regarding his medical care. As previously stated, Plaintiff has not alleged that Defendant's implementation of any policy affected his medical care. In any event, Plaintiff's allegations do not appear to be against Defendant. Cermak is the primary medical provider for Cook County Jail, and Plaintiff complains only that he is not being given necessary medication or treatment. *Dkt. 1, Compl.* at ¶ 15, 17. Although the custodian retains a duty to provide adequate healthcare, *Daniel v. Cook County*, 833 F.3d 728, 737 (7th Cir. 2016), it appears that Plaintiff is complaining of the quality of treatment and medication decisions made by Cermak. Plaintiff has not alleged that the Sheriff's office failed to take him to appointments or otherwise interfered with his care. *Cf. Daniel v. Cook County*, 833 F.3d 728, 737 (7th Cir. 2016) (explaining Sheriff was proper Defendant where pretrial detainee "offered evidence that the Sheriff's Office exacerbated the problems by failing to communicate with Cermak and failing to deliver [detainee] to his appointments").

## CONCLUSION

Accordingly, Plaintiff's Complaint should be dismissed. With regard to his request that he be placed on Electronic Monitoring, abstention is appropriate under *Younger v. Harris*, 401 U.S. 37 (1971). Alternatively, the *Rooker-Feldman* doctrine precludes this Court from altering the conditions of Plaintiff's confinement. Moreover, Plaintiff has failed to state a claim because he has not pleaded facts showing that his alleged conditions are serious enough to amount to a constitutional deprivation or that his conditions are the result of any official policy.

WHEREFORE, Defendant request that this Honorable Court enter an order dismissing Plaintiff's complaint with prejudice, and any other relief this Court deems just and proper.

Respectfully Submitted,

KIMBERLY M. FOXX
State's Attorney of Cook County

By: /s/ *Jessica L. Wasserman*
Jessica L. Wasserman
Joseph A. Hodal
Assistant State's Attorneys
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603.5967
jessica.wasserman@cookcountyil.gov
joseph.hodal@cookcountyil.gov

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that on September 16, 2022, she caused a true and correct copy of the foregoing to be electronically filed with this Court using the Court's CM/ECF system, which will provide electronic notice of such filing to all counsel of record.

*/s/ Jessica L. Wasserman*