EXHIBIT E

MOTION TO PURGE OR

VACATE CONTEMPT

FILED
7/28/2022 1:19 PM
IRIS Y. MARTINEZ
CIRCUIT CLERK
COOK COUNTY, IL
2008D002844
Calendar, 61
18862304

**IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**
**COUNTY DEPARTMENT - DOMESTIC RELATIONS DIVISION**

| | | |
|---|---|---|
| IN RE THE MARRIAGE OF: | ) | |
| | ) | |
| Pamela Harnack | ) | |
| | ) | |
| Petitioner | ) | **No. 08 D 2844** |
| | ) | |
| and | ) | |
| | ) | **Judge Michael A. Forti** |
| Steve Fanady | ) | |
| | ) | |
| Respondent | ) | |
| | ) | |

## MOTION TO PURGE OR VACATE CONTEMPT

NOW COMES, Respondent Steve Fanady, by and through his attorney Laura Grochocki, and moves this Court to enter an Order purging or vacating the finding of indirect civil contempt and body attachment orders entered against him, and in support of this motion states as follows:

1.    Respondent Steve Fanady ("Fanady") is moving this Court to purge or vacate the indirect civil contempt and body attachment orders entered against him because it is impossible for him to comply with the purge terms of the contempt order and obtain his release from custody from the body attachment. This motion will be supported by documents previously admitted into evidence during a three (3) day post-judgment hearing held on April 4, 5 and 6 of 2017, or which have been authenticated under the Illinois Rules of Evidence. Also, since the contempt finding of February 9, 2021, there has been a change in circumstances which will be shown by competent evidence.

**I. The Law on Contempt and Impossibility of Compliance**:

2.    First, we will outline the law on the issue of a contemnor's inability to purge himself of contempt, and what should be done when this is shown to be the case. The case law indicates

FILED DATE: 7/28/2022 1:19 PM   2008D002844

that when an order of civil contempt can no longer serve its purpose the contempt should be purged or the order of contempt vacated.

3. The Illinois Supreme Court case of ***Felzak v. Hruby, 226 Ill. 2d 382, 391-392 (2007)***, states the law, even though the reason for the impossibility to perform purge is different than in Fanady's situation:

> Because Ralph and Sondra can no longer compel Katie to visit Geraldine, the rationale for the civil contempt order in this case has been lost. When a situation such as this occurs, the appropriate disposition of the case, and the action we take here, is to vacate the judgments of the lower courts and remand the cause with instructions to dismiss. *Shillitani v. United States*, 384 U.S. 364, 371, 16 L. Ed. 2d 622, 627-28, 86 S. Ct. 1531, 1536 (1966); see also *Sanders v. Shephard*, 163 Ill. 2d 534, 541, 645 N.E.2d 900, 206 Ill. Dec. 648 (1994) ("As a requirement of due process, then, a civil contempt order will be vacated once it is evident that the sanction imposed is no longer fulfilling its original, coercive function"). ***Felzak v. Hruby, 226 Ill. 2d 382, 391-392 (2007)***

4. In a case involving a missing child, a matter much more serious than money or stock, the Illinois Supreme Court stated:

> Commitment for civil contempt, lawful when ordered, may lose its coercive effect, however. *(Soobzokov v. CBS, Inc.* (2d Cir. 1981), 642 F.2d 28, 31 ("When it becomes obvious that sanctions are not going to compel compliance, they lose their remedial characteristics and take on more of the nature of punishment").) The parties agree that a sanction for civil contempt must be vacated once it becomes clear that the sanction has become merely punitive. "Due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." *(Jackson v. Indiana* (1972), 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858.) As a requirement of due process, then, a civil contempt order will be vacated once it is evident that the sanction imposed is no longer fulfilling its original, coercive function. ***Sanders v. Shephard, 163 Ill. 2d 534, 540-541 (1994)***

The Sanders id., case, citing to the US Supreme Court case of *Jackson v. Indiana 406 U.S. 715(1972)*, also holds that, in any event, a person cannot be held indefinitely because "[d]ue process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed."

5. In the case of ***Debowski v. Shred Pax Corp.**, 45 Ill. App. 3d 891, 904-905(1977),* which

FILED DATE: 7/28/2022 1:19 PM 2008D002844

involved an order of indirect civil contempt for failing to transfer stock or pay of money, which is

similar to Fanady's civil contempt order, the court stated:

> Defendants argue that the lower court did not properly impose punishment for contempt in sentencing defendants to six months imprisonment subject to the payment of some $240,000 to the Hawthorne Bank because it was impossible for defendants to perform the condition for discharge of their sentence. It has been stated that:

>> "Imprisoning a party for refusing to pay money to another does not solely aim to punish the contemnor but also to obtain for the other party such sums as are due and owing. (*People ex rel. Meier v. Lew*, 380 Ill. 531, 44 N.E.2d 551.) A proper order therefore should provide the contemnor's key to his cell. It follows that defendant's imprisonment here for a definite time is improper. The order should have provided the amount defendant was required to pay according to his ability to meet the payments, and to provide terms upon which the balance should be paid, so that by satisfying the order defendant could purge himself of the contempt and be discharged from jail. (*White v. Adolph*, 305 Ill. App. 76, 26 N.E.2d 993; *Todd v. Arbuckle*, 1 Ill. App. 3d 32, 272 N.E.2d 257; *LaRue v. LaRue*, 341 Ill. App. 411, 93 N.E.2d 823.) *Sullivan v. Sullivan* (1973), 16 Ill. App. 3d 549, 552.

> **Defendants correctly note that were it impossible for them to perform the condition of their discharge, the sentence imposed by the trial court would be improper.** However, as pointed out by plaintiffs both on appeal and before the trial court, defendants have not introduced evidence indicating that in fact compliance with the condition of their discharge is impossible. We do not have before us a record which indicates that it is in fact impossible for defendants to procure compliance with the condition of their sentence for contempt. We cannot, therefore, agree with defendants that the sentence imposed in the trial court is unlawful. **If compliance with the condition for discharge imposed by the trial court is in fact impossible, defendants should make application to the trial court for reduction of sentence and introduce in that court proof of the impossibility**. **If impossibility is shown the trial court should vacate the sentence imposed and resentence defendants in accordance with the standards governing sentence for civil contempt.** See *Sullivan v. Sullivan*, as quoted above. ***Debowski v. Shred Pax Corp., 45 Ill. App. 3d 891, 904-905(1977)*** (emphasis added)

6. Finally, the February 2021 finding that Fanady had the ability to comply with the order

is not dispositive. In ***In re Marriage Betts, 200 Ill. App. 3d 26, 57 (1990)***, the court held that

contemnor is entitled to raise, impossibility of complying with the order during his incarceration:

> For the above reasons, we hold that indigents faced with jail sentences for indirect civil contempt are not entitled to court-appointed counsel. **In such proceedings, courts should, of course, afford respondents every reasonable opportunity to establish that compliance with the court orders which they are accused of violating is impossible**

3

FILED DATE: 7/28/2022 1:19 PM    2008D002844

**and to request vacatur of the contempt sanctions imposed upon them on that basis**. <u>*In re Marriage Betts, 200 Ill. App. 3d 26, 57 (1990)*</u> (emphasis added)

Moreover, no right to a jury trial exists in indirect civil contempt proceedings. (*Shillitani v. United States* (1966), 384 U.S. 364, 365, 16 L. Ed. 2d 622, 624, 86 S. Ct. 1531, 1533; *Cheff v. Schnackenberg* (1966), 384 U.S. 373, 377, 16 L. Ed. 2d 629, 632, 86 S. Ct. 1523, 1524; *Shlensky*, 49 Ill. App. 3d at 894, 364 N.E.2d at 437.) No jail sentence for indirect civil contempt will exceed six months unless the respondent, through his continued recalcitrance, makes it exceed six months. **Prior to the expiration of a six-month period of incarceration, an indirect civil contemnor has ample opportunity either to comply with the court order in question or to explain why he or she cannot comply with it.** <u>*In re Marriage Betts, 200 Ill. App. 3d 26, 57 (1990)*</u> (emphasis added)

It should also be noted that **the <u>*Betts*</u>, id., court stated a contemnor should not be held in jail for more than six (6) months on a finding of indirect criminal contempt.** In such a situation, a "trial court should vacate the sentence imposed and resentence defendants in accordance with the standards governing sentence for civil contempt. See *Sullivan v. Sullivan*, as quoted above." <u>*Debowski*</u> **id.**

## II. The Relevant Facts:

7.    This Court can take judicial notice of the Orders entered in this case.    <u>**People v. Fields,**</u> **2020 IL App (1st) 151735, ¶58**    It is uncontested that Petitioner Pamela Harnack ("Harnack"), was awarded 120,000 shares of CBOE stock in the Judgment of Dissolution entered on **August 3, 2011,** (*eleven years ago*). (**Exhibit "A"**) [1]    On December 11, 2020 an Order was entered on Harnack's Motion to Compel Compliance with Judgment of Dissolution directing Fanady to turn over 120,000 shares of CBOE stock, or their value, to Harnack within two (2) weeks. (**Exhibit "B"**)    It is further uncontested that Fanady was held in indirect civil contempt of court on February 9, 2021, for his failure to deliver 120,000 shares of CBOE stock to Harnack. (**Exhibit "C"**)    It is

---

1. For the Court's convenience, and to make it easier to review the documents, all the exhibits will be in a separate indexed Appendix, where each exhibit will be "Bookmarked" using the Adobe bookmark feature, and the index will also have a Hyperlink to each exhibit.

FILED DATE: 7/28/2022 1:19 PM  2008D002844

further uncontested that an Order of Body Attachment was also entered on February 11, 2021.

(**Exhibit "D"**)  It is also uncontested that this Court entered a new Body Attachment Order on

June 21, 2022. (**Exhibit "E"**)

8.  The February 9, 2021, contempt order provides in relevant part:

> On the 11th day of December, 2020 this Court entered an order directing the contemnor to transfer 120,000 shares of CBOE Holdings, as well as any monetary benefit associated with the shares or alternatively, pay to Petitioner the value of the shares and any monetary benefit associated therewith.

> IT IS THEREFORE ORDERED AND ADJUDGED that the contemnor:

> Is hereby found and declared to be in indirect civil contempt of Court for willful failure to obey the Court's order as herein stated:

> Is ordered committed to the Cook County Jail, there to remain until he shall have purged himself of contempt by: Transferring 120,000 shares of stock, ticker symbol CBOE, to Petitioner; OR transferring the sum of $10,000,000.00 (ten million dollars) to the Petitioner based on a reduced figure from the $85.97/share close price on December 11, 2020 (**Exhibit "C"**)

9.  The June 21, 2022 body attachment order entered by this Court states in relevant part:

> On the 11th day of December, 2020 this Court entered an order directing the contemnor to transfer 120,000 shares of CBOE Holdings, as well as any monetary benefit associated with the shares or alternatively, pay to Petitioner the value of the shares and any monetary benefit associated therewith.

> As of the 14th day of June, 2022, Respondent has failed to: comply with the terms of the December 11, 2020 Order, having failed to transfer any monetary sums or shares of CBOE to the 'Petitioner.

> As of the 14th day of June, 2022, Respondent has failed to: comply with the terms of the December 11, 2020 Order, having failed to transfer any monetary sums or shares of CBOE to the 'Petitioner.

> WHEREFORE THE COURT ORDERS:

> The Sheriff of Cook County, the Sheriff of any County in Illinois, or any duly deputized Law enforcement agent to seize the Respondent: Name: STEVE FANADY Date of Birth: **/**/****. height 5' II", weight 190lbs, Caucasian. Last known home address: ************ Lane, Northbrook, IL 60062,

FILED DATE: 7/28/2022 1:19 PM   2008D002844

If the Respondent, STEVE FANADY, is taken into custody, the Sheriff/law enforcement agency may release the Respondent after he shall deposit $10,000,000.00 (Ten Million Dollars) into escrow with the Sheriff or the court. (**Exhibit "E"**)

10.   It is uncontested that Fanady was taken into custody by the Sheriff of Cook County on June 28, 2022. (**Exhibit "F"**) It is further uncontested that Fanady is currently in the custody of the Sheriff of Cook County, Illinois pursuant to the aforesaid orders. (**Exhibit "F"**) Pursuant to these orders Fanady is to remain in the custody of the Sheriff for an indeterminate amount of time until he posts $10,000,000.00 (Ten Million Dollars) into escrow with the Sheriff or the court or transfers 120,000 shares of CBOE stock to Harnack.

11.   Finally, as the Memorandum Order of July 11, 2017 shows, it is uncontested that all of Fanady's assets were held in an offshore spendthrift trust which he established in 1995, prior to the parties' marriage. (**Exhibit "G"**) The terms of the trust show that Fanady's knowledge of the amount of funds the trust holds, and his access to any money held by the trust, is very limited. (**Exhibit "H"**)  As will be shown below, the records already admitted in this case demonstrate that the proceeds from the liquidation of the 120,000 shares of CBOE stock were transferred this offshore asset protection trust six (6) months prior to the entry of the Judgment of Dissolution in August 2011.  Also, as will be shown the trust has been closed by the trustee because all the funds have been expended over the past eleven (11) years.

**III. Impossibility of Performance**:

12.   "A person held in civil contempt must have the ability to purge the contempt by complying with the court order. Contempt based on past actions which cannot be undone means that the contemnor lacks the ability to purge the contempt because the purpose of civil contempt is to compel compliance with court orders, not to punish. Therefore, whenever a court order cannot be complied with, there cannot be a finding of civil contempt." ***In re Marriage of O'Malley, 2016***

6

FILED DATE: 7/28/2022 1:19 PM   2008D002844

*IL App (1st) 151118, P26* (internal citations omitted) (Also see *In re Marriage of Montgomery,*

*2020 IL App (2d) 180726, P43*)

13.   With documents already admitted into evidence and in the record, and with recently received documents, authenticated and admissible into evidence, tax returns and financial affidavit,   Fanady will show that it is impossible for him to comply with December 11, 2021 Order directing him to turn over 120,000 shares of CBOE stock or $10,000,000 to Harnack.   The reason for this is twofold.   First, as will be shown from the documents in evidence in this case, all of which were introduced or disclosed by Harnack, the 120,000 shares of CBOE stock referred to in the August 3, 2011 Judgment of Dissolution were liquidated prior to the entry of the Judgment of Dissolution. Since the stock was sold at least six (6) months prior to the entry of the 2011 Judgment of Dissolution there are no shares of CBOE stock to turn over to Harnack.   Secondly, Fanady will show that he does not have any money or assets.   Documents, authenticated business records will show that the overseas assets protection trust into which Fanady's money and assets, as well as the proceeds of the liquidation of the CBOE stock, were held has been closed by the trustee because all of the funds have been exhausted.

**A. The CBOE Stock Was Liquidated Eleven (11) Years Ago, Six (6) Months Before the Divorce Judgment Was Entered;**

14.   First, Fanady will show that the 120,000 shares of CBOE stock was sold at least six (6) months prior to the August 3, 2011 Judgment of Dissolution, and has not existed for almost twelve (12) years.[2] While this part of the motion may be detailed and technical, it is important for this Court to understand this because, since the Stock was sold in the December 2010/February

---

2. This is a fact that Harnack is aware of as the documents that show this came from her discovery disclosures, which were introduced into evidence at the April 2017 post-judgment hearing in this case. She can also confirm this by issuing a subpoena to the CBOE, something she has, to-date, refused to do.

7

FILED DATE: 7/28/2022 1:19 PM   2008D002844

2011 period, Fanady never had the $10,000,000 that Harnack attributes to him.  In January 2011 CBOE stock had a price of $24.46 per share (**Exhibit I**), not the $85.97 per share price per share used in the February 9, 2021contempt order to compute the $10,000,000 figure. (**Exhibit C**) This is important because it shows that the stock was sold for $2,900,000 in December 2010/February 2011, and not the $10,000,000 based on the December 2020 value**. (Exhibits C, I)** Fanady's trust never got $10,000,000 for the CBOE stock. The trust only got $2,900,000, which as will be shown, is gone.

15. Fanady transferred 120,000 shares of CBOE stock to a Pictet & Cie account in Switzerland on or before February 3, 2011.  (**Exhibit I**)[3] This was over eleven (11) years ago, and six (6) months **before** the entry of the Judgment of Dissolution on August 3, 2011. (**Exhibit A**) It was also **before** any injunction had been entered restricting transfer of the CBOE stock, (**Exhibit J**).  In fact, the record in this case indicates that the CBOE stock in question was transferred from the CBOE to a domestic securities account as early as January 4, 2011, a fact that Harnack was aware of. [4] (**Exhibit K**) Also, Harnack was aware of the transfer of the CBOE stock to the Swiss accounts well **before** the entry of the August 3, 2011, Judgment of Dissolution. (**Exhibit L**)  We know this because Harnack included the Swiss bank's name and account numbers in her March 2011 Injunction Order (**Exhibit J**). It was also included in the August 3 2011 Judgment of Dissolution, so as to identify property that was being awarded to Fanady in the Judgment. (**Exhibit A, pgs. 3 and 9**) Despite her statements to the contrary, nothing was concealed from Harnack.

---

3. This market quotation is admissible into evidence pursuant to Ill. R. Evid.  803(17).

4. An examination of the facsimile transmission header at the very top of the CBOE transaction records attached to Harnack's March 2011 Motion for a TRO, (**Exb. K**) shows that Harnack received the records of Fanady's transfer of CBOE stock out of CBOE custody by facsimile transmission on January 13, 2011, a **month before** she filed a motion for a TRO. (**Exb. J**)

8

FILED DATE: 7/28/2022 1:19 PM   2008D002844

16.   First, it was impossible for Fanady to transfer the 120,000 shares of CBOE stock to Harnack pursuant to the Order of December 11, 2020 because the shares were sold over a decade ago, and therefore he did not have possession or control of those shares.

Fanady testified at the February 9, 2021 hearing (**Exhibit M**), that:

> "I have tried to get shares from the trust. There are no shares available. They never had shares." (Page 6)

> "I have never collected any interest, dividends, or other monetary benefits from shares of CBOE Holdings stock since date of the divorce judgment since August 3, 2011. Therefore, it was impossible for me to comply with the Paragraph 7 of the order of December 11, 2020, in the above entitled case on the date it was entered or at any time thereafter."  (Page 5)

This testimony was unrebutted by any testimony, evidence, or on cross-examination by Harnack.

17.   Regarding Fanady's off-shore trust, it was Fanady's unrebutted testimony that: "The trust has never had any shares".

> MR. FANADY: Well, then the question is does the trust have any shares? The answer is no.
> THE COURT: Anything else?
> MR. FANADY: The trust never had any shares. (**Exhibi**t **M** Page 7)

In reality nobody ever doubted that the 120,000 shares of CBOE stock that Fanady transferred to the Swiss Pictet & Cie accounts eleven (11) years ago are not in Fanady's possession or control. Harnack's lawyer admits that they have no idea if Fanady has any CBOE stock or money. Harnack's lawyer stated to the court:

> "We have no idea what Mr. Fanady did with 120,000 shares."
> (**Exhibit M, pg. 13**)

18.   In fact this was the case in August 2011, prior to the entry of the Judgment of Dissolution of Marriage. Over eleven (11) years ago, during the default prove up on August 3, 2011, Harnack's lawyers expressed serious doubt that Fanady had possession or control over any CBOE stock. (**Exhibit N, pgs. 6-9**)  Fanady's testimony that he hasn't had possession or control

FILED DATE: 7/28/2022 1:19 PM    2008D002844

of any CBOE stock since before the entry of the Dissolution of Marriage, is nothing new. Harnack has been aware of this for over a decade, yet she still obtains an order in December 2020 for Fanady to transfer that stock to her, knowing it is impossible.

19. Fanady knows that this is a motion based on impossibility of performance, and he cannot re-litigate what has been ruled on. The Judgment of Dissolution (**Exhibit A**) and the December 11, 2020 Order (**Exhibit B**) have been affirmed and are not subject to collateral attack. However, Fanady wishes to make two (2) points, **not to re-litigate**, but to show how Harnack's own actions corroborate Fanady's evidence and testimony that the CBOE stock was liquidated over eleven (11) years ago. First, Harnack can easily confirm what she already knows, that the 120,000 shares of CBOE stock transferred by Fanady to the Swiss account was liquidated in February 2011, by issuing a subpoena to the CBOE asking it to trace the stock in question. Harnack has the CUSP and ISIN numbers, the dates of transfer. (**Exhibits K, L**) This way Harnack can, and always could have, confirmed the stock was sold, and even gotten the sale price. But Harnack hasn't done this, and won't do it, because she wants to maintain the false narrative that Fanady has been sitting on these shares for over a decade and it is worth, or was sold for, $10,000,000. Being willfully blind as to what actually happened to the CBOE stock, and when it happened, is to Harnack's financial benefit.

20. Secondly, Harnack's actions also corroborate Fanady's impossibility argument. The question must be asked; given her knowledge of the transfer of the 120,000 shares of CBOE stock in January 2011, and the liquidation of those shares, (**Exhibits K, L**) why did Harnack go through an entire decade of litigation against third parties before directing her attention to Fanady? It was not until March 21, 2019 after Harnack lost her attempt to obtain the CBOE shares held by CBOE Holdings for third parties, (*IRMO Harnack and Fanady 2019 IL App (1st) 170813-U*), that

FILED DATE: 7/28/2022 1:19 PM   2008D002844

Harnack paid any attention to Fanady and the CBOE stock she knew had been transferred and liquidated before the entry of the Judgment, over a decade earlier.  Only then, ten and a half (10½) years after the Judgment of Dissolution was entered, did Harnack file her *Petition to Enforce Judgment of Dissolution* asking for a turnover order against Fanady for the 120,000 shares of CBOE stock.

21.    This corroborates Fanady's evidence and testimony that the CBOE stock was liquidated eleven (11) years ago, and shows that Harnack knows this. We know this because if Harmack believed the 120,000 shares of CBOE stock still existed she would **not** have engaged in the current *Petition to Enforce* and contempt proceedings, which have taken another three (3) years of litigation.  Instead Harnack would have asked the court for an order requiring that the CBOE take Fanady's 120,000 shares (identified by CUSP and ISIN numbers[5]), and re-issue the shares to her. So why didn't Harnack take this simple step?[6] Harnack did not proceed in this manner because her goal was not to get the stock she knew Fanady did not have, but instead was to get a cash award for the value of the stock when Fanady did not turn over the 120,000 shares he did not have. This is the only apparent reason for Harnack's behavior in waiting ten (10) years to go after Fanady for CBOE stock when she knew that those shares had been liquidated before the entry of the Judgment of Dissolution, over eleven (11) years ago, just as Fanady has always maintained.  This is corroboration of Fanady's evidence of impossibility regarding the turnover of the CBOE stock.

---

5.    These identification numbers (CUSP and ISIN) are in the documents Harnack already has. (**Exhibits K, L**).

6.  As he has constantly maintained, Fanady will agree to the entry of such an order directed to CBOE, and take any other act to show his cooperation. He is not contemptuous of the court orders, it is just that the stock and money are not there.

FILED DATE: 7/28/2022 1:19 PM   2008D002844

**B.  Fanady Does Not Have Ten Million Dollars ($10,000,000) Or Even a Fraction of that Amount:**

22.  Fanady understands that it is his burden to show that he does not have the money to pay the $10,000,000 required to get out of jail, or even a fraction of that amount. He accepts that burden.  But before that evidence is presented, it is essential for this issue to be put in context.  It has been Harnack's constant refrain in this case for many years that Fanady has many millions of dollars stashed away that he refuses to disclose.  However, there has never been any evidence presented to the court that Fanady has these millions of dollars, that is unless you call the arguments of Harnack's lawyers, unsworn and unsubstantiated, to be evidence.  Not only are the allegations that Fanady has vast wealth utterly false, but these claims are also unsupported by any actual evidence. These stories of wealth are completely fabricated, based on incomplete information and half-truths, to give the false impression that a sizeable fortune exists.  Even then, all of these stories are over ten (10) years old.   See *In re Marriage of Liszka, supra.,* and *In re Van Hoveln, supra.*

23.  First, this Court should be aware that both the prior judge and the Appellate Court have found that Harnack intentionally and while under oath mislead the court at the August 3, 2011, prove-up in this case, falsely inflating the number of CBOE shares in the martial estate from 120,000 to 240,000 shares. In *IRMO Harnack and Fanady 2019 IL App (1st) 170813-U P32-P33,* the Appellate Court found:

> "Despite knowing that Fanady, through Alpha, only had an interest in 120,000 shares and that he had already withdrawn 120,000 shares, Harnack procured a dissolution judgment which stated that during the marriage the parties acquired marital property including "[t]he equivalent of 320,000 (Three Hundred Twenty Thousand) shares of Chicago Board of Options Exchange (CBOE) stock (Steve Fanady being 100% owner of at least 280,000); *** CBOE stocks in the name of Alpha Industries, LLC; *** [and] CBOE stocks in the name of Fanmare Partnership."

At the August 3, 2011 prove-up hearing, Harnack testified that she had reviewed the dissolution judgment and the itemization of the marital property set forth in the dissolution judgment. Harnack, however, failed to inform the court:

> "(i) that there were never 320,000 shares of CBOE Holdings common stock because Fanady had sold CBOE Seat No. 301003 prior to the CBOE's demutualization and IPO;
>
> (ii) that Israelov, through ISRFAN, and Marme, through Fanmare, each owned a 50% interest in three (3) of the former CBOE Seats that had each been exchanged for a total of 240,000 shares of CBOE Holdings common stock; or
>
> (iii) that Fanady had already withdrawn 120,000 of these 240,000 shares." [7]

24.   Secondly, Harnack cannot simply point to decades old information from prior to the August 2011 entry of the Judgment of Dissolution as evidence of Fanady's current finances. This is insufficient.  A person's income or wealth cannot be calculated or imputed from outdated data or evidence. ***In re Marriage of Liszka, 2016 IL App (3d) 150238***; ***In re Van Hoveln, 2018 IL App (4th) 180112.*** There is nothing in the record in this case to suggest that Fanady has anything close to the ability to pay a fraction of the $10,000,000 (ten million dollars) required by the contempt order or this Courts body attachment order.

25.   Recognizing that it is his burden to show that it is impossible for him to come up with the $10,000,000 (Ten Million Dollars) necessary to be released from jail, Fanady relies on three (3) points, which are supported by evidence. Having reviewed the briefs and pleadings filed by Fanady and Harnack in this case, and the positions Harnack has taken in various motions, we are certain that Harnack will respond by "gaslighting" Fanady, repeating the same troupes she has in

---

7. Fanady is **not** trying to re-litigate or collaterally attack the Judgment or the Appellate Court mandate.  He is only referring to this finding that Harnack intentionally mislead the judge hearing the prove-up on August 3, 2011, while testifying under oath, for the sole purpose of **impeaching Harnack's credibility** and the credibility of her claims regarding Fanady's alleged wealth. Harnack has made misrepresentations about them once while under oath, so why wouldn't she do so again?

FILED DATE: 7/28/2022 1:19 PM  2008D002844

her briefs and pleadings.  However Haranck has not, and will not, be presenting any actual evidence; nor will she be presenting anything that is not at least eleven (11) years old.

26.    First, there is the fallacy that the 120,000 shares of CBOE stock was sold for $10,000,000.  As Fanady has outlined above, with reference to documents showing the transfer and date of sale, the stock was transferred to a Pictet & Cie account in Switzerland, liquidated, and the proceeds put into Fanady's offshore asset protection trust. (**Exhibits K, L**)  Since the stock was sold in the December 2010/February 2011 period neither Fanady nor the trust received $10,000,000 from the stock sale.  In January 2011 CBOE stock had a price of $24.46 per share (**Exhibit I**), not the $85.97 per share price per share used in the February 9, 2021 contempt order to compute the$10,000,000 figure. (**Exhibit C**)  This means that the stock was sold for $2,900,000 in December 2010/February 2011, and not $10,000,000, which was based on the December 2020 value. (**Exhibits I, C**)  Neither Fanady nor his trust ever got $10,000,000 for the CBOE stock. The trust only got $2,900,000 in February 2011. However, as will be shown, this has been spent over the past eleven (11) years.

27.    If Harnack wishes to contest the documents and evidence presented by Fanady about the stock sale and proceeds as false or misleading, she has, and always had, the ability to trace what happened to the CBOE stock, and she still has that ability. All she need do is issue a subpoena to the CBOE, or the DTCC. Harnack has the CUSIP and ISIN numbers of the stock shares. (**Exhibit K**) But she won't issue the subpoena, preferring ignorance to knowledge. If she has done this, she hasn't told anyone what was discovered.  It wouldn't be the first time Harnack concealed material information from a court. _IRMO Harnack and Fanady_ _2019 IL App (1st) 170813-U_)

28.    Secondly, there is Fanady's off shore asset protection trust, the SF Trust.  (**Exhibit H**)

FILED DATE: 7/28/2022 1:19 PM 2008D002844

This asset protection trust[8] held all of Fanady's assets, and it is into this trust that the proceeds of the sale of the 120,000 shares of CBOE stock was deposited in early 2011, eleven (11) years ago. (**Exhibit L**) Therefore we have approximately $2.9 million deposited in the SF trust in 2011. Fanady has been retired since then, no longer trading at the CBOE. His only job after 2011 is as a member of the Board of Directors of the Minneapolis Grain Exchange, for which he receives a stipend of $40,200 per year. (**Exhibit O**) The trust paid his day to day expenses until then, pursuant to the spendthrift provision of the trust. (**Exhibit H**)

29. Attached are the Notices from the SF Trust (**Exhibit P**), the properly authenticated business records of the Trustee of the SF Trust are admissible into evidence pursuant to Illinois Supreme Court Rule 902(11). These notices show that the Trustee had received Fanady's request to comply with the Orders entered in this case, and that two (2) notices were sent to Fanady in response. The first notice, dated March 23, 2022, states as follows:

"This request cannot be considered due to insufficient financial resources within The Second Amended And Restated 2009 Trust. The Trustee also informs you The Second Amended And Restated 2009 Trust shall be dissolved within 30 days due to insufficient financial resources." (**Exhibit P, 3/23/2022 Notice**)

30. The second notice, dated April 17, 2022, states as follows:

"As Trustee of The Trust, in accordance with Article 4 Paragraph 3 and Paragraph 5 of The Second Amended And Restated 2009 SF Trust please be advised due to insufficient financial resources within The Tmst, The Second Amended And Restated 2009 SF Trust is dissolved and terminated on this day, April 17, 2022." (**Exhibit P, 4/17/2022 Notice**)

31. After eleven (11) years Fanady's trust has run out of money. This is not surprising nor

---

8. As the "Panama Papers" have shown, these types of offshore asset protection trusts are not uncommon. For instance, Governor JB Pritzker (and the entire Pritzker family), former British PM David Cameron, businessmen such David Geffen and celebrities have these types of trusts. There is nothing illegal or immoral about having one as long as it is disclosed to the other side, and Harnack knew of Fanady's offshore trust before they married. In fact Harnack is a "trust fund child" herself.

FILED DATE: 7/28/2022 1:19 PM   2008D002844

should it come as a surprise. While $2,900,000 may seem like a lot of money, and it is, when spread over eleven (11) years, it is only $263,000 a year. Considering that is eleven (11) years of intensive litigation with Haranck, (all of which were based on Harnack's petitions[9]), and given the fact Fanady's second (2nd) wife filed for divorce in 2016 (refiled in 2018 as 2018 D 8662), it is not hard to believe that Fanady had expenses which exceeded $263,000 per year to live and pay his bills. In addition other factors, such as trustee fees, fluctuating international currency rates, and losses from the trustee's investments, could have also contributed to the exhaustion of the funds in the SF trust. The bottom line is that the trust that held all of Fanady's assets has been closed because the money has been expended.

32. Third, is the fact that Fanady has no other assets, a minimal income (none while he is incarcerated), and no ability to obtain even a fraction of the $10,000,000 required for his release or to purge the contempt. Attached is Fanady's Financial Affidavit, on the form provided by the Illinois Supreme Court, with all the required attachments including his 2020 Federal Income Tax Return, and his 2021 Form 1099. (**Exhibit O**) In compliance with Circuit Court of Cook County Local Rule 13.3.1, this Financial Affidavit was served on Harnack's attorneys on June 20, 2022, and filed with the Court on June 27, 2022. This Financial Affidavit shows that, when not incarcerated, Fanady earns $3350.00 per month, has no assets, no stocks, no bonds, no real estate, no investments, no interests in any businesses, and nointerests in any trusts. The Financial Affidavit also shows that Fanady still owes over $200,000 in attorney's fees to lawyers from his second divorce case. Fanady is flat broke, his divorces having cost him everything. (**Exhibit O**)

---

9. First was Harnack's failed attempt to take stock that belonged to third parties, as well as several other failed petitions for other relief, all of which Harnack appealed (*IRMO Harnack v. Fanady 2019 IL (1st) 170813-U* ), and second is the instant Petition to Enforce and the following contempt petitions, rules and body attachments.

FILED DATE: 7/28/2022 1:19 PM 2008D002844

33. Without any income or assets, and with the trust that paid his bills for the last decade being dissolved due to insufficient financial resources, it is impossible for Fanady to pay the $10,000,000 due under the contempt order and body attachment. Because the CBOE stock he was ordered to turn over to Harnack in December 2020 was sold prior to the August 3, 2011 Judgment of Dissolution was entered, Fanady cannot satisfy the contempt order by turning over stock that does not exist. It is impossible for Fanady to "to perform the condition of their discharge the sentence" ***Debowski v. Shred Pax Corp., id.*** As the cases cited at the beginning of this motion "correctly note that were it impossible for [Fanady} to perform the condition of [his] discharge the sentence imposed by the trial court would be improper". ***id***. The purpose of the indirect civil contempt order entered against Fanady is to coerce compliance with the orders of the court. ***In re Marriage of Berto, 344 Ill. App. 3d 705 (2003)*** The purpose of a civil contempt order is to coerce compliance with an order, not punish for non-compliance. ***Berto, id.*** Because it is impossible for Fanady to comply, the civil contempt order has lost its coercive effect and has become merely punitive, and should be vacated.

> Commitment for civil contempt, lawful when ordered, may lose its coercive effect, however. *(Soobzokov v. CBS, Inc.* (2d Cir. 1981), 642 F.2d 28, 31 ("When it becomes obvious that sanctions are not going to compel compliance, they lose their remedial characteristics and take on more of the nature of punishment").) **The parties agree that a sanction for civil contempt must be vacated once it becomes clear that the sanction has become merely punitive.** "Due process requires that the nature and duration of commitment" bear some reasonable relation to the purpose for which the individual is committed." *(Jackson v. Indiana* (1972), 406 U.S. 715, 738, 32 L. Ed. 2d 435, 451, 92 S. Ct. 1845, 1858.) As a requirement of due process, then, a civil contempt order will be vacated once it is evident that the sanction imposed is no longer fulfilling its original, coercive function. ***Sanders v. Shephard, 163 Ill. 2d 534, 540-541 (1994)*** (emphasis added)

34. Fanady has made this *Motion to Purge or Vacate* the contempt order because that is what the case law says he should do: "In such proceedings, courts should, of course, afford respondents every reasonable opportunity to establish that compliance with the court orders which

FILED DATE: 7/28/2022 1:19 PM   2008D002844

they are accused of violating is impossible and to request vacatur of the contempt sanctions imposed upon them on that basis." ***In re Marriage Betts, id***

> If compliance with the condition for discharge imposed by the trial court is in fact impossible, defendants should make application to the trial court for reduction of sentence and introduce in that court proof of the impossibility. If impossibility is shown the trial court should vacate the sentence imposed and resentence defendants in accordance with the standards governing sentence for civil contempt. See *Sullivan v. Sullivan*, as quoted above. ***Debowski v. Shred Pax Corp., 45 Ill. App. 3d 891, 904-905(1977)*** (emphasis added)

35.  Harnack will say that Fanady caused this problem and therefore is not entitled to relief from the contempt order nor release from jail.  If it is impossible for Fanady to comply, but he cannot be released, then what? It is life in jail?  The purpose of indirect civil contempt is to coerce compliance, not punish. ***In re Marriage Betts, 200 Ill. App. 3d 26, 57 (1990)*** The cases cited above hold that "[a]s a requirement of due process, then, a civil contempt order will be vacated once it is evident that the sanction imposed is no longer fulfilling its original, coercive function." ***Sanders v. Shephard, 163 Ill. 2d 534, 540-541 (1994)***

36. The solution is set forth in  ***Debowski v. Shred Pax Corp., 45 Ill. App. 3d 891, 904-905(1977)***: "In such a situation, a "trial court should vacate the sentence imposed and resentence defendants in accordance with the standards governing sentence for civil contempt. See *Sullivan v. Sullivan*, as quoted above." ***Debowski* id.**  This Court can "resentence" Fanady by entering an order which provides for a payment plan based on "the amount defendant was required to pay according to his ability to meet the payments, and to provide terms upon which the balance should be paid. ***Sullivan***, id., and/or enter a money judgment giving Harnack all the powers of a judgment creditor to seize property, bank accounts, and wages, (such an order can be registered in any foreign country Harnack believes Fanady has assets in[10]).  The Court can even order Fanady to get

---

10.  This is not insignificant.  Judgment collection procedures in many foreign countries are much

FILED DATE: 7/28/2022 1:19 PM    2008D002844

a job he qualifies for and is healthy enough to perform.   The relief that can be granted by the court is not one dimensional, and jail is not the only "sentence" available.

## IV.  Because He Has Only Been Found In Indirect Civil Contempt It is Improper to Punish Fanady

37.   Finally, because it is certain that Harnack will be *de facto* advocating that Fanady be punished for his behavior, Fanady feels the need to briefly comment this issue. "On the other hand, criminal contempt sanctions are imposed for the purpose of punishing past misconduct." ***In re Marriage of Berto, 344 Ill. App. 3d 705 (2003)*** If Fanady intentionally violated a court order, then in certain limited circumstances, he can be held in criminal contempt, however a civil contempt cannot just be converted to a criminal contempt. Fanady cannot be held in criminal contempt at this point.   Defendants in criminal contempt proceedings have all the due process rights of any criminal defendant, from the (a) right to remain silent, to (b) the right to proof beyond a reasonable doubt, (c) the right to a criminal complaint, (d) the right to confront his accuser, (e) the right to be prosecuted by an independent prosecutor and not an interested adversary, and even in some cases (f) the right to a jury trial. ***In re Marriage Betts, 200 Ill. App. 3d 26, 57 (1990)***  Fanady has not been afforded any of those rights.   If Harnack wishes to go the criminal contempt route she has to start from the beginning and follow all the procedures required to initiate criminal contempt proceedings.  It is not for Fanady to tell her how to do this.

## V. Conclusion

38.   Therefore, under the law cited above, as it is impossible for Fanady to comply with the purge provisions of the civil contempt order of February 9, 2021 or the body attachment order of

---

harsher than in the US, and in these countries, where privacy is not a protected right, assets are easier to find.  In fact if Harnack really believes Fanady has assets in a foreign country it is hard to understand why she has not done this already.

FILED DATE: 7/28/2022 1:19 PM   2008D002844

June 21, 2022, he can no longer be imprisoned pursuant to a civil contempt order or held in civil contempt. These Orders, or at a minimum the incarceration and body attachment Orders, must be vacated.  A new and appropriate Order should be entered.  "In such a situation, a "trial court should vacate the sentence imposed and resentence defendants in accordance with the standards governing sentence for civil contempt. See *Sullivan v. Sullivan*, as quoted above." ***Debowski id.***

39.   There is no need that the only remedy for violation of a court order, or even civil contempt, to be incarceration. To do so where it is impossible for the contemnor to comply with the order is a violation of constitutional due process. This Court and the civil justice system, just like the criminal justice system, are not "one trick ponies."  Fanady has alluded to some alternate sentences and remidies in paragraph thirty-six (36) of this motion, and we are sure the Court can come up with other more alternatives we have not thought of.

**WHEREFORE**, the Respondent Steve Fanady prays that this Court enter an order vacating the Order of indirect civil contempt entered on February 9, 2021, and the body attachments entered in this case on June 21, 2022 (and the prior incarceration orders of February 9, 2021 and body attachment of February 11, 202), and enter alternative relief as outlined in the case law cited above, *and* further enter such other relief as the Court deems fit and just.

Respectfully Submitted

*/s/ Laura Grochocki*

Attorney for Steve Fanady

Laura Grochocki
Attorney for Steve Fanady
200 East Illinois Street, 3211
Chicago, Illinois 60611
312-620-0671
lauraglaw@aol.com
Attorney No. 61809

Verification

Under penalties as provided by law pursuant to Section 1-109 of the Code of Civil Procedure, the undersigned certifies that he has read the Complaint for a Writ of Prohibition and the statements set forth therein are true and correct, except as to matters therein stated to be on information and belief and as to such matters the undersigned certifies as aforesaid that he verily believes the same to be true.

_____
Steve Fanady