## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLIONIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **Steve Fanady** | ) | |
| | ) | |
| **Plaintiff** | ) | **No. 22 cv 4180** |
| | ) | |
| **and** | ) | |
| | ) | **Judge: Andrea Wood** |
| **Thomas Dart, as Sheriff of Cook County** | ) | |
| **Illinois** | ) | **Magistrate: Cummings** |
| | ) | |
| **Defendant** | ) | |
| | ) | |

## FIRST AMENDED COMPLAINT

NOW COMES, Plaintiff Steve Fanady, by and through his attorney, Laura Grochocki, and as his first amended complaint against Thomas Dart, as Sheriff of Cook County, Illinois, states as follows:

## PRELIMINARY STATEMENT

1. The Plaintiff, Steve Fanady, is an individual who is a citizen of the State of Illinois who is currently in the custody of Thomas Dart the Sheriff of Cook County pursuant to a civil body attachment after being found in indirect civil contempt of court. This action is not an attack, collateral or otherwise, on the state court order finding the Plaintiff in indirect civil contempt. This case is a civil rights action brought under 42 U.S.C §1983 and concerns the violations of Plaintiff's civil rights by the Sheriff of Cook County, who in his official capacity and under color of state law, is holding a Plaintiff, a civil detainee, in conditions which violate Plaintiff's due process rights, the statutes, and regulations of the State of Illinois, and which shock the conscience, in violation of the 14th Amendment to the Constitution of the United States. The Defendant has violated, and has a policy and practice which violates, and has been deliberately indifferent to, the

Plaintiffs' rights under the due process clause of the Fourteenth Amendment to the Constitution of the United States to be held in conditions which do not cause imminent and serious harm to this physical and mental health, which endanger Plaintiff's life, and, if not halted immediately, will cause serious and permanent physical and mental harm to the Plaintiff.

2. As a result of the willful and deliberate indifference, and the actions and inactions of the Defendant Sheriff, the Plaintiff is (a) being held in solitary confinement even though he has not violated any rules or regulations of the jail; (b) is not being treated for complications resulting from his recent double hip replacement surgery, arthritis, and other health issues; (c) is being deprived of recreation or physical activity causing his health to deteriorate to the point where he has lost his ability to walk without aid and requires a wheelchair to travel more than a short distance; (d) despite his need for a wheelchair he is either not provided one, or when one is provided to take him to an anywhere outside of his cell the jail staff refuse to push the wheelchair; (e) is not being provided with a bed he can sleep in or a toilet he can use; (f) is not being provided with basic care or medication for his physical or mental health; (g) is kept in an area where the floor is covered with rat feces and infested with roaches; (h) every time Plaintiff uses the toilet and flushes the toilet, it backs up spilling feces, urine, and toilet paper onto the floor of the washroom; (i) has not been able to take a shower for 17 weeks because the shower in his cell is not ADA-compliant and (j) toxic smoke is leaking into his room from the cells above through a hole drilled in the ceiling by inmates.   All of this is shocking to the conscience and causes the imminent risk of serious physical and mental harm to the Plaintiff, a civil detainee, in violation of his substantive due process rights under the 14th Amendment to the Constitution.   The Plaintiff has administratively grieved about all of the above but the Sheriff has been willfully indifferent to the forgoing, and despite feigning concern, has done nothing to correct these conditions.

3.   While the state court's indirect civil contempt proceedings and orders are not under attack in this action, the course of events in the state court will be briefly outlined below. "The statutory procedures provide an understanding of the circumstances against which the court is to decide whether the defendants violated …… substantive due process rights". *Hunt v. Elkhart County*, 95 F. Supp. 2d 930, 937 (2000)

## JURISDICTION AND VENUE

4.   This Court has jurisdiction of this action under 28 U.S.C. §1331 and 42 U.S.C. §1983 in that Defendant's conduct violated rights guaranteed to Plaintiff under the First, Eighth, and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claims under 28 U.S.C. §1367(a).

4.   Venue is proper under 28 U.S.C. § 1331 and 28 U.S.C. § 1367.  The events giving rise to the claims asserted here all occurred within the district, and all of the parties reside in this district.

## PARTIES

5.   Plaintiff Steve Fanady (hereinafter "Plaintiff" or "Fanady") is an individual who is 57 years old, a citizen of Illinois, and has his residence in the County of Cook in the State of Illinois. Plaintiff is currently in the custody of the Sheriff of Cook County, Illinois for indirect civil contempt, and is being held in the Cook County Jail.

6.   Defendant Thomas Dart is the Sheriff of Cook County, Illinois, (hereinafter "Sheriff" or "Defendant") and is being sued in his official capacity. Defendant has custody of persons pursuant to the laws and court orders of the State of Illinois and operates and administers the Cook County Jail for that purpose.

# FACTUAL ALLEGATIONS

7. On August 3, 2011, a default Judgment of Dissolution of Marriage was entered in the divorce case of IRMO Pamela Harnack and Steve Fanady, 2008 D 2844 in the Circuit Court of Cook County, Illinois. In that judgment, Pamela Harnack ("Harnack") was awarded 120,000 shares of Chicago Board of Options Exchange ("CBOE") stock. Then, eight and one-half (8½) years later, on December 9, 2019, Harnack filed her *Motion to Enforce Judgment* in the divorce case. On December 11, 2020, ten and one-half (10 ½) years after the Judgment of Dissolution was entered, Harnack's Motion to Enforce Judgment was granted. The order of December 11, 2020 ordered that Plaintiff either transfer 120,000 shares of CBOE stock to Harnack or pay her $10,000,000.00 (ten million dollars) within fourteen (14) days.

8. Plaintiff did not comply with the December 11, 2020 order, claiming that he did not have the 120,000 shares of CBOE stock, nor did he have $10,000,000, and therefore it was impossible for him to comply. Harnack then filed a Petition for a Rule to Show Cause asking that the Defendant be held in indirect civil contempt of court for his failure to comply with the order of December 11, 2020, enforcing the Judgment of Dissolution of August 3, 2011. Plaintiff was held in indirect civil contempt of court on February 9, 2021, and an order that the Plaintiff be held in the custody of the Sheriff of Cook County, Illinois until he complies with the order of December 11, 2020. Also, a Body Attachment (a civil arrest warrant) was issued for Plaintiff's arrest on February 9, 2021. Then, on June 28, 2022, eleven (11) years after the entry of Judgment of Dissolution of Marriage in his divorce case, Plaintiff was taken into the custody of the Sheriff and was taken to the Cook County Jail, where he is currently being held.

9. The Plaintiff is a civil detainee being held by the Sheriff for indirect civil contempt until he complies with the order of December 11, 2020, or is otherwise released by the divorce court.

The Plaintiff continues to maintain that he does not have 120,000 shares of CBOE stock from eleven (11) years ago, nor did he have $10,000,000, and therefore, it is impossible for him to comply with the December 11, 2020 order enforcing the August 3, 2011 Judgment of Dissolution.

10.   The law in Illinois regarding the detention of civil detainees, i.e. people who are not charged with a criminal offence, is unambiguous and clear:

(A) 730 ILCS 125/11 states:

> Debtors and witnesses shall **not** be confined in the same room with other prisoners;
> *730 ILCS 125/11* (emphasis added)

(B) 20 Ill. Admin Code 701.7 states:

> (4) Non-criminal
> (A) Non-criminal detainees such as traffic violators, nonsupport cases, and persons charged with **civil contempt** who are supervised under the direct supervision option shall be kept **separate** by cell or detention room from detainees charged with criminal offenses. *Ill. Admin. Code tit. 20, §701.71(b)(4)* (emphasis added)

11.   Further, under both federal and Illinois state case law it is an unconstitutional violation of the Due Process clause of the 14th Amendment to keep a detainee who has not violated any jail rules in solitary confinement:

> This Circuit has found that procedural due process requires that pretrial detainees can only be subjected to segregation or other heightened restraints if a pre-deprivation hearing is held to determine whether any rule has been violated. *Johnston v. Maha, 606 F.3d 39, 41 (2010)*
>
> (Also see *Benjamin v. Fraser, 264 F.3d 175, 188-189 (2001) and Kucinsky v. Pfister, 2020 IL App (3d) 170719, P80*)

12.   Because the Cook County Jail does not currently have a separate facility, or area within the jail for the separate detention of civil detainees,[1] the Plaintiff was initially placed in a

---

1. Prior to the COVID-19 pandemic, the Cook County Jail did have a separate unit for civil detainees.  However, because of the difficulties in detaining people during the pandemic, and

dormitory-style unit in Division 8 of the jail where the inmate population consisted entirely of those charged with or convicted of, criminal offenses. Plaintiff immediately complained of this saying he was supposed to be housed separately from those charged or convicted of criminal offenses. During the time Plaintiff was housed in the dormitory setting, he was harassed and threatened by some of the inmates charged with, or convicted of, criminal offenses. Then, after a few days, Plaintiff was moved out of the dormitory area.

13. Plaintiff was next housed by the Sheriff in the medical Residential Treatment Unit ("RTU") of Division 8 of the Jail. The inmates in the RTU in Division 8 consist entirely of those charged with, or convicted of, criminal offenses. Because Plaintiff cannot be in contact with inmates who are charged with, or who have been convicted of, a criminal offense Plaintiff was kept in solitary confinement, twenty-four (24) hours a day, (7) seven days a week, in a small room.

14. Harnack's former attorneys are owed a substantial amount of money for representing Harnack in her divorce and post-judgment divorce proceedings. One of these former attorneys for Harnack has stated that he expects to be paid hundreds of thousands of dollars out of any money Harnack collects from Plaintiff. Also, a law firm whose attorneys formerly represented Harnack in post-judgment proceedings against Plaintiff are, on information and belief, owed substantial amounts of money, more than one million dollars, for their representation of Harnack in post-judgment divorce proceedings, and expect to be paid out of any money collected from the Plaintiff.

15. On information and belief, the aforesaid one former attorney for Harnack has a close friendship with deputy sheriff who now works, or recently worked, as an executive level manager for the Defendant Sheriff of Cook County. On information and belief, this person was promoted

---

because of the moratorium on most civil contempt proceedings during the pandemic, that area closed. On information and belief, the Sheriff has no current plans to re-open it.

within the ranks of the Sheriff's office because of the lobbying of the former attorney for Harnack. Further, on information and belief, a named partner in the law firm which previously represented Harnack in post-conviction proceedings against Plaintiff also owns a private security firm that employs a significant number of current and former employees of the Defendant Sheriff.

16. On information and belief, both the former attorney for Harnack, and the former law firm whose attorneys formerly represented Harnack, have used their relationships and connections with employees of the Defendant Sheriff of Cook County to cause the Sheriff's office to intentionally, maliciously and in bad faith (a) make the Plaintiff's conditions in the Cook County Jail as miserable as possible by keeping him in solitary isolation, and making his condition as bad as possible; (b) to cause the jail to deny the Plaintiff required toilet, shower, laundry, and other facilities and delay the repair of any such broken or defective facilities, (c) to cause the jail to deny the Plaintiff required medical treatment and examinations; (d) to take the position that the Plaintiff should not be put on Electronic Monitoring; (e) to interfere with the Plaintiff's ability to sleep, exercise and keep healthy, and (f) to harass and aggravate the Plaintiff at every opportunity.

17. On information and belief, both the former attorney for Harnack and the former law firm whose attorneys formerly represented Harnack, have used their relationships and connections with employees of the Defendant Sheriff of Cook County to act as set forth above, to coerce the Plaintiff to pay money to Harnack so that they could be paid the substantial amounts they are owed by Harnack. This is the equivalent of using personal and political influence to cause the torture of the Plaintiff by the Sheriff for monetary gain in violation of the aforesaid constitutional rights of the Petitioner. Since this illegal campaign of torture cannot succeed because the Plaintiff is without any funds by which he could pay anything to Harnack, unless the Court intervenes, the torture of the Plaintiff because of the intervention of these former attorneys for Harnack will continue

unabated until the Plaintiff dies because of his treatment.

18.     Among the reasons given by the Sheriff for the Plaintiff to be kept in solitary confinement is because he is a civil detainee. Because the Plaintiff is a civil detainee the Cook County Jail lacks the facilities and staff to house him according to the law. *Supra.* Plaintiff has not been accused of violating any jail rule for which the punishment would be solitary confinement. Plaintiff's detention in the same facility (i.e., floor, wing, deck, division, etc.) with criminal defendants which results in his solitary confinement because the jail lacks sufficient staff to open a separate facility to house non-criminal detainees as required by law, violates his rights under the due process clause of the 14th Amendment to the Constitution of the United States.

19.   While Plaintiff was being held in solitary confinement in a small room in the RTU, which is not designed or intended for long-term stays or solitary confinement, the following conditions existed: (a) no lights in his cell, (b) no clean underwear or clothing and no access to laundry, (c) no exercise, (d) no time outside cell, (e) no medical care for complications resulting from his recent double hip replacement surgery, (f) temperature was kept at 60-64 degrees Fahrenheit, (g) no access to books or magazines, (h) very limited access to television, and (i) no access to the commissary.  Conditions of isolation such as this will lead to a rapid decline in any detainee's mental and physical health.

20.  Plaintiff complained of the forgoing to the jail guards and social workers and did so in writing when, after repeated requests, he was finally provided with grievance forms.  Then after approximately twenty-six (26) days in solitary confinement in the RTU, the Plaintiff was moved to an empty dormitory-style room in Division 2 of the Cook County Jail, where he is currently housed.  Plaintiff is still being held alone, in solitary confinement, in this dormitory-style room, which was designed for, and has bunk beds for, approximately thirty (30) inmates.

21. The conditions the Plaintiff is currently held in will shock the conscience of any reasonable person. The Plaintiff is being held in the under the following conditions, i.e. Plaintiff is: (a) held solitary confinement, alone in a dormitory style cell, even though he has not violated any rules or regulations of the jail, (b) is not allowed any time outside of his cell, (c) the floor of his cell is covered with rat feces, (d) his cell is infested with insects drawn to the rat feces, (e) is not being given medical treatment for complications resulting from his recent double hip replacement surgery, (f) is being deprived of recreation or opportunities for physical activity causing[2] (i) his physical health to deteriorate to the point where Plaintiff has lost his ability to walk without aid and (ii) which is negatively effecting his mental health which is rapidly declining, (g) is not being provided with a bed in which he is able sleep (as a result of his recent surgery) forcing him to sleep on a table; (h) is not being provided with a toilet he can use as his deteriorated physical condition does not allow him to use the toilets in his cell, (i) the toilet in his cell backs up when Plaintiff flushes it, spilling feces, urine, and toilet paper onto the floor of the washroom; (j) has not been able to take a shower for 17 weeks because he is unable to use it because the shower in his cell is not ADA-compliant resulting in the Plaintiff developing fungal growth on his feet and a rash between his legs; (k) being injured by toxic smoke which is leaking into his cell from the cells above through a hole drilled in the ceiling by inmates who are smoking paper soaked in a toxic chemical; (l) is not being provided necessary medications required because of his frail and rapidly deteriorating physical health; (m) is not being provided with treatment for his deteriorating mental health; (n) no access to clean underwear and no access to a laundry, and (o) despite Plaintiffs need for a wheelchair to move more than a short distance he is either not provided one, or when one is

---

2. Plaintiff has only been given five (5) recreation periods of thirty (30) minutes each during the forty (40) days he has been in custody in an interior area near his cell, where he is alone, unaided, and without equipment he can use.

provided to take him to anywhere outside of his cell the jail staff refuse to push the wheel chair because "it is not their job".

22.  The forgoing conditions, intensified by several months of solitary confinement, [3] have led to a marked decline in the Plaintiff's physical and mental health, the most visible of which is his inability to walk without aid, the need for a wheel chair, which are conditions which only happened after he was held in solitary for 26 days in the RTU and has continued to deteriorate since he was placed in solitary confinement in his current cell.  A continuation of Plaintiff being held in the forging conditions will lead to a continued rapid decline in Plaintiffs mental and physical health, and eventually will lead to his death.

23.  The Sheriff has been willfully negligent and deliberately indifferent to the conditions and circumstance of Plaintiff's conditions and the conditions under which he is being held. The Sheriff has put, and is putting, budget and monetary considerations ahead of his legal obligation and duties owed to all the detainees in his custody, and specifically to Plaintiff.  The Cook County Jail is currently woefully understaffed and therefore unable to staff and open the necessary facilities to house civil detainees is a separate area, in conditions which provide even the minimum constitutionally required housing, facilities, amenities, and medical care.

24.  In the alternative, on information and belief, the Sheriff has been intentionally irresponsible, deliberately indifferent, and has intentionally caused or allowed the aforesaid conditions and circumstance of the conditions under which Plaintiff is being held and the deterioration of Plaintiff's physical and mental condition. The Sheriff has put, and is putting,

---

3.  The Sheriff undoubtedly understands that holding a detainee in an illegal manner, such as solitary confinement, subjects the county to liability.  The Sheriff must also be well aware that holding a person in solitary confinement will have a substantial negative effect on mental health and will cause mental illness. https://www.nami.org/Advocacy/Policy-Priorities/Stopping-Harmful-Practices/Solitary-Confinement

budget and monetary considerations ahead of, and on information and belief is allowing outside influence to keep him from performing his legal obligation and duties owed to the Plaintiff as a detainee in his custody.

25. Further, the Cook County Jail is currently woefully understaffed and therefore unable to staff and open the necessary facilities to house civil detainees is a separate area, in conditions which provide even the minimum constitutionally required housing, facilities, amenities, and medical care.

26.  The Sheriff's deliberate indifference to Plaintiff's aforesaid conditions and circumstances is established by the undisputable fact that the Sheriff has refused to take the one single act, and act that is well within his distraction to take, that would resolve this entire matter. That would be for the Sheriff to put the Plaintiff on house arrest under the Sheriff's electronic monitoring ("EM") program.  On information and belief, this refusal to put the Plaintiff on the EM program is also the result of illegal outside influence and interference regarding Plaintiff as set forth *supra.*

27.  The EM program of the Sheriff of Cook County utilizes a GPS bracelet which monitors and tracks the detainees' location 24/7, and alerts the Sheriff in real time to any movement outside of the approved location. [4]  The conditions of confinement under the Sheriff's EM program can be as strict as being in jail, without the solitary confinement, lack of medical care, and harm to physical and mental health currently being caused.[5]  The conditions can prohibit Plaintiff from

---

4. https://www.cookcountysheriff.org/departments/cook-county-department-of-corrections/electronic-monitoring-program/

5. Also, if Plaintiff were to violate the EM program by leaving the house or removing the EM bracelet he could be charged with escape, **a class three (3) felony** under 730 ILCS 5/5-8A-4.1, and imprisoned in the state penitentiary from two (2) to five (5) years. (730 ILCS 5/5-4.5-40)

leaving the home, prohibiting visitors other than within a set window of time (i.e. similar to visitation time in the jail). The Sheriff can also put other restrictions on the detainee it deems necessary.

28. The Sheriff has complete discretion to put Plaintiff in the EM program pursuant to 730 ILCS 5/5-8A-8, and does not need permission to do so. (Also see 730 ILCS 5/5-8A-3(f) and 730 ILCS 5/5-8A-4) The refusal of the Sheriff to put Plaintiff on the EM program shows deliberate indifference to Plaintiff's aforesaid conditions.

29. Plaintiff and his attorney have both requested that the Sheriff put Plaintiff into its EM program and made them aware that Plaintiff's parents own a home in Cook County that is currently unoccupied and is available for Plaintiff's confinement under the EM program. Despite these requests and the availability of a suitable location, the Sheriff has refused to put Plaintiff into its EM program. This proves that the Sheriff is deliberately indifferent to Plaintiff's above described conditions.

**WHEREFORE**, the Plaintiff Steve Fanady prays that this Court enter an order compelling the Sheriff of Cook County to either:

(A) immediately open a facility where Plaintiff and other civil detainees can be housed where they are not in solitary confinement, and are provided with acceptable medical care, recreation, and other required and necessary facilities which are in proper working order and repair; or

(B) immediately place Plaintiff in the Sheriff's Electronic Monitoring program, requiring him to wear a GPS enabled bracelet monitor which must be worn continually, and confining him to a suitable house in Cook County Illinois, twenty four (24) hours a day seven (7) days a week, restricting him to visits of frequency and length similar to those allowed in the Cook County Jail;

[12]

(C) Such monetary damages allowed by law;

(D) Such other relief as the Court deems necessary to vindicate the Plaintiff's rights and stop the violation of his substantive due process rights under the 14th Amendment to the Constitution of the United States.

Respectfully Submitted

/s/ Laura Grochocki
Attorney for Steve Fanady

Laura Grochocki
Attorney for Steve Fanady
200 East Illinois Street, 3211
Chicago, Illinois 60611
312-620-0671
lauraglaw@aol.com
Attorney No. 6239444

## PROOF OF SERVICE

I, Laura Grochocki attorney for the Plaintiff certifies under penalties as provided by law that I caused to be served the above and foregoing <u>First Amended Complaint</u> via the EM/ECF electronic filing system to the attorneys of record for all parties on the <u>12th day of October 2022</u> before 5:00 p.m.



/s/ Laura Grochocki

Laura Grochocki
Attorney for Steve Fanady
200 East Illinois Street, 3211
Chicago, Illinois 60611
312-620-0671
lauraglaw@aol.com
Attorney No. 6239444