UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

STEVE FANADY,

            Plaintiff,

vs.

THOMAS J. DART
      SHERIFF OF COOK COUNTY,

            Defendant.

22 -cv- 04180

Judge ANDREA WOOD

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION FOR LEAVE TO FILE A PETITION FOR A WRIT OF HABEAS CORPUS**

Now comes Defendant, THOMAS DART, SHERIFF OF COOK COUNTY ("Sheriff Dart" or "Defendant"), by and through his attorneys, O'MARA & O'CALLAGHAN, LLC, and respectfully requests this Court to deny Plaintiff's *Motion for Leave to File a Petition for a Writ of Habeas Corpus*. Dkt. 56. In support thereof, Defendant states as follows:

**INTRODUCTION**

Before this Court is Plaintiff's *Motion for Leave to File a Petition for a Writ of Habeas Corpus* (hereinafter Plaintiff's "Motion"), with the attached *Petition for a Writ of Habeas Corpus of Person in State Custody* (hereinafter Plaintiff's "Proposed Motion"). Dkt. 56. Therein, Plaintiff requests this Court to enter an Order to compel "the State of Illinois [to] either grant the Plaintiff a new trial or release him from custody." Dkt. 56-1, at 1. However, Plaintiff's present request for *Habeus Corpus* relief is simply the most recent of Plaintiff's numerous attempts to avoid complying with lawful orders which are adverse to him.

Through his present motion, Plaintiff is clearly attempting to forum shop and bypass Illinois State Courts where he has failed to exhaust State remedies available to him. Plaintiff has not filed a

state petition for habeas relief. Moreover, Plaintiff has not even completed the hearing on his *Motion to Purge or Vacate Contempt*. Consequently, Plaintiff's Proposed Motion fails to show that there is an absence of available State corrective process or that circumstances exist that render such process ineffective to protect his alleged rights. *See* 28 USCS § 2254. Plaintiff's true motive is for seeking Federal *Habeas* relief is that Illinois Courts are aware of his long history of misconduct. The Illinois Appellate Court recently held, Plaintiff's behavior has been so "egregious, so contemptuous of the law and the court," that he can no longer invoke the principals of justice to appeal the judgment relating to his marriage dissolution. *See In re Marriage of Harnack*, 2022 IL App (1st) 210143¶ 6 (*Harnack IV*)[1] (citing *Harnack I*, 2014 IL App (1st) 121424, ¶ 62. Accordingly, where Plaintiff has not exhausted his state remedies and where Plaintiff is clearly motivated by forum shopping, this court must deny Plaintiff's Motion.

## FACTUAL BACKGROUND

Plaintiff and his ex-wife, Pamela Harnack, married in October 2003 and never had children together. *Harnack I*, 2014 IL App (1st) 121424, ¶5. In March 2008, Harnack filed for dissolution of marriage, and Plaintiff initially participated in the dissolution proceedings and was represented by various counsel. *Id.* On September 17, 2010, following a petition for unpaid legal fees filed by one of the firms that represented Plaintiff, the court granted Plaintiff's counsel leave to withdraw and allowed Plaintiff twenty-one days in which to retain new counsel or file a *pro se* appearance. *Id.* Fanady did neither, and on November 1, 2010, the court found Plaintiff in default. *Id.*

During the marriage, Plaintiff had acquired four membership seats to the Chicago Board of Options Exchange (CBOE). *Id.* at ¶1, 7. "In November 2009, while the dissolution proceeding was

---

[1] *Harnack IV* follows three other appeal proceedings filed by Plaintiff: *In re Marriage of Harnack*, 2014 IL App (1st) 121424 (*Harnack I*); *In re Marriage of Harnack*, 2019 IL App (1st) 170813-U (*Harnack II*); and *In re Marriage of Harnack*, 2021 IL App (1st) 210014-U (*Harnack III*).

pending and without Harnack's knowledge, [Plaintiff] sold one seat for $2.775 million and transferred the funds to a bank account in Switzerland." *Id.* at 7. On June 14, 2010, when CBOE Holdings went public and exchanged each CBOE seat for 80,000 shares of CBOE Holdings restricted stock, Plaintiff held three of his original four seats in two accounts under two different names, totaling 240,000 restricted shares. *Id.* ¶7-8. On January 4, 2011, after some of the shares had become freely transferrable, Plaintiff transferred 80,000 shares from one of his accounts. *Id.* at ¶8. On February 8, 2011, Plaintiff transferred 40,000 more shares from another account. *Id.* at ¶8.

On February 9, 2011, Harnack moved for a temporary restraining order (TRO) and preliminary injunction seeking to bar Plaintiff, his agents, or his enterprises from transferring any of Plaintiff's assets, especially any CBOE Holdings shares. *Id.* at ¶6-8. In her filing, Harnack correctly referenced the January 4, 2011 transfer of 80,000 shares. *Id.* at ¶8. However, unbeknownst to Harnack, Plaintiff had transferred the additional 40,000 shares from one of his accounts the day before the request for TRO was filed. *Id.* As a result, at the time Harnack filed the request for TRO, all that remained was a total of 120,000 shares. *Id.*

On August 3, 2011, the court held a prove-up hearing on the dissolution action, including hearing testimony from Harnack, and entered the judgment for dissolution of marriage. *Id.* at ¶13. Despite receiving notice of the proceeding and even allegedly being present in the courtroom a half hour before the hearing, Plaintiff did not attend the hearing. *Id.* In the judgment, the court found that Plaintiff was worth approximately $7.3 million as of March 2010 and found that Harnack had minimal income, had health issues, and was unable to support herself. *Id.* Accordingly, the Court awarded Ms. Harnack 120,000 shares of CBOE stock, as it was part of the parties' marital estate. *Harnack IV*, 2022 IL App (1st) 210143, ¶1. The court noted that one of [Plaintiff]'s business partners had instituted a breach of partnership action, which was pending with 40,000 shares in dispute, and

the court ordered 40,000 shares to be held in an escrow account pending resolution of that action. *Id.*, at ¶2-3.

Following the order, it became clear that Plaintiff was avoiding obligations, not only to his ex-wife, but to his business partners as well. *Harnack IV*, 2022 IL App (1st) 210143, ¶2-3. In *Harnack I*, Plaintiff moved to vacate the judgment of dissolution of marriage, arguing that the judgment was unfair and based on a misunderstanding of the size of the marital estate. *Harnack IV*, 2022 IL App (1st) 210143, ¶4. The trial court denied Plaintiff's motion, and Plaintiff appealed. *Id.* In the appeal, the First District noted Plaintiff's "complete refusal to participate in" the proceedings and his refusal to comply with the court's orders. *Id.*, *citing Harnack I*, 2014 IL App (1st) 121424, ¶ 46. The First District Court further stated that: (1) "the record showed [Plaintiff's] 'attempts to evade the jurisdiction of the court and to defraud this court' as well as a Florida court, where he obtained a dissolution of marriage judgment under false pretenses;" and (2) that "the record further showed that [Plaintiff] 'forge[d] *** a dissolution judgment in order to obtain a religious divorce' and attempted to 'hide marital assets by selling one presumptively marital CBOE seat and hiding the money received in Switzerland and by transferring 120,000 presumptively marital shares' from partnership accounts." *Id.* at ¶5, *quoting Harnack I*, 2014 IL App (1st) 121424, ¶ 46. "Rather than participate in the action and present his own evidence to the court to rebut Harnack's evidence, [Plaintiff] chose instead to make underhanded efforts to prevent Harnack from getting her appropriate share of the marital assets and to avoid the trial court's jurisdiction" and chose to display behavior that was "so egregious, so contemptuous of the law and the court" that he could not use it as a basis to complain that substantial justice required the judgment against him to be vacated. *Harnack I*, 2014 IL App (1st) 121424, ¶62. The First District affirmed the denial of Plaintiff's motion to vacate and stated that any "errors or injustices in the judgment for dissolution of marriage" of which Plaintiff now complained "would not have occurred absent his abandonment of the litigation.

[Plaintiff] chose not to participate in the litigation. He must now live with the consequences of that decision." *Id.* at ¶ 45-46.

Ultimately, because the parties disagreed regarding the source of the shares to be transferred to escrow, the First District remanded for the limited purpose of clarifying the transfer provision for those shares. *Id.* at ¶ 64, 66. Ironically, the First District expressly cautioned that it was not "inviting further litigation regarding Fanady's attempts to vacate the judgment." *Id.* at ¶ 67. Plaintiff filed a petition for leave to appeal to the Illinois Supreme Court, which was denied. *Harnack IV*, 2022 IL App (1st) 210143, ¶7.

The proceedings in *Harnack II* follow Harnack's attempts over the next several years to obtain the shares she was awarded in the judgment. Because Plaintiff "had already hidden may of the CBOE shares that were part of the marital estate," the only shares apparently remaining to be distributed were in the holding accounts that were subject to the interpleader action, which had to be resolved before any release thereof could be ordered. *Harnack IV*, 2022 IL App (1st) 210143, ¶8. Following briefing and a trial regarding the proper distribution of the CBOE shares, the trial court "faulted [Plaintiff] for his attempts 'to deceive his ex-wife and his former business partners,' explicitly noting that [Plaintiff] had 'transferred an additional 120,000 shares of stock to locations which he now refuses to disclose.'" *Harnack IV*, 2022 IL App (1st) 210143, ¶9; *quoting Harnack II*, 2019 IL App (1st) 170813-U, ¶ 98. The court held that because Plaintiff had transferred the 120,000 shares, Plaintiff and Harnack had no claim to the remaining shares being held by the stock holding company. *Id.* "The trial court found Harnack's arguments 'compelling as an equitable matter,' but concluded that she was required 'to chase Mr. Fanady for her just share of the marital estate.'" *Id.* On appeal, the District Court, *inter alia*, affirmed the judgment of the circuit court as to Harnack's claims against Plaintiff's business partners. *Id.*

The proceedings in *Harnack III* follow Harnack's petition for enforcement of the judgment for dissolution of marriage, seeking the 120,000 shares of CBOE stock that she was awarded. *Harnack IV*, 2022 IL App (1st) 210143, ¶ 10. Plaintiff filed a motion to dismiss, a motion to reconsider, and a motion for summary judgment, all of which were denied. *Id.* at ¶ 13-18. Accordingly, on December 11, 2020 the Court entered an order (hereinafter "December 11, 2020 Order) requiring Plaintiff to transfer to Harnack "120,000 shares of CBOE Holdings" (and any interest or dividends since the divorce judgment) or in the alternative, if Plaintiff no longer possessed those shares, ordered Plaintiff to "pay [Harnack] the value of said shares along with any interest, dividends, or other monetary benefits collected by [Fanady]" on or before December 18, 2020." *Id.* at ¶ 19. On appeal, the First District affirmed the holding and stated that Plaintiff's "attempts to relitigate the judgment, and his continued arguments that it was unfair or based on an overstated marital estate, are not persuasive." *Harnack IV*, 2022 IL App (1st) 210143, ¶22 (*citing Harnack III*, 2021 IL App (1st) 210014-U, ¶ 45).

Finally, the proceedings in *Harnack IV* surround the basis of the contempt order and body attachment issued against Plaintiff, following Harnack's petition for rule to show cause after Plaintiff did not comply with the December 11, 2020 Order. *Harnack IV*, 2022 IL App (1st) 210143, ¶23-37. Following a hearing, the Court entered a written order of adjudication of indirect civil contempt, finding that Plaintiff failed to comply with the December 11, 2020 Order, and ordered him committed to Cook County Jail until he purged his contempt by transferring to Harnack 120,000 shares of CBOE stock, or $10 million (derived from a computation based on stock price of CBOE stock as of December 11, 2020). *Id.* at ¶33. Most notably, during the hearing, the Court agreed with arguments that "there is nothing short of arrest that will enforce the orders" of the court. *Id.* at ¶58. Accordingly, the First District held on appeal that the contempt order was "properly coercive" and not an abuse of discretion, and that Plaintiff holds the "keys to his cell" and may purge the contempt

at any time, by simply complying with the order. *Id.* at ¶59. The Court also made the distinction that the pertinent order required specific performance – that Plaintiff transfer CBOE shares – rather than an order for a money judgment. *Id.* at ¶62. The Court also found that the record supported the finding that Fanady failed to show he lacked the financial means to comply with the order. *Id.* at ¶63.

Plaintiff was taken into custody on June 28, 2022, and remains in custody at the Cook County Jail. *Proposed Motion* (Dkt. 56-1), at ¶ 12. On July 28, 2022, Plaintiff filed a *Motion to Purge or Vacate Contempt*. *Id.* at ¶ 18. On January 5, 2023, the hearing on Plaintiff's requests to purge his contempt began, and the hearing was continued to April 18, 2023. *Id.* at 17-18. Even though this hearing is still pending, Plaintiff filed the at-issue Motion requesting federal *habeas* relief. Notably, Plaintiff has not filed a petition in state court requesting *habeas* relief.

## ARGUMENT

Plaintiff has requested leave to move for *habeas* relief under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *See* Dkt. 56, at 1; *see also* 28 USC §2254. To obtain federal *habeas* relief under 28 USC §2254, the petitioner must establish that "he is in custody in violation of the Constitution or laws or treaties of the United States." *Ehlers v. Gallegos*, 2020 U.S. Dist. LEXIS 2028, *10. Incarceration pursuant to a state court judgment of civil contempt qualifies as custody for purposes of § 2254(a). *Id.* (*citing Puchner v. Kruziki*, 111 F.3d 541, 542 (7th Cir. 1997)). However, Plaintiff's proposed claims lack merit for three reasons: first, because Plaintiff's requests for *habeas* relief are barred by the *Younger* abstention doctrine; second, because Plaintiff has failed to exhaust his available remedies in the already-pending state litigation; and third, because Plaintiff has failed to show that his rights were violated for being held in custody pursuant to a lawful order or that his detainment is in violation of any federal law. Accordingly, this Court should deny Plaintiff's Motion.

I.     **THIS COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE PLAINTIFF'S CLAIMS ARE SUBJECT TO PRESENT STATE COURT LITIGATION AND ARE THUS BARRED UNDER THE *YOUNGER* ABSTENTION DOCTRINE**

This Court should deny Plaintiff's Motion because abstention is appropriate under *Younger v. Harris*, 401 U.S. 37 (1971). The *Younger* doctrine "directs federal courts to abstain from exercising jurisdiction over federal claims that seek to interfere with pending state court proceedings." *J.B. v. Woodard*, 997 F.3d 714, 722 (7th Cir. 2021). Although *Younger* abstention was first articulated in relation to state criminal proceedings, it "is also fully applicable to civil proceedings in which important state interests are involved." *Moore v. Sims*, 442 U.S. 415, 423 (1979); *see also Sprint Communs., Inc. v. Jacobs*, 571 U.S. 69, 78 (2013) (explaining *Younger* abstention may apply to civil enforcement proceedings); *Juidice v. Vail*, 430 U.S. 327, 336 (1977) (holding that *Younger* applies to pending state court contempt proceedings). In determining whether abstention is appropriate, the court looks to the following: "1) the judicial...state proceedings must be on-going; (2) the proceedings must implicate important state interests; and 3) there must be an adequate opportunity in the state court proceeding to raise constitutional challenges." *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996).

All three factors are met here. First, by Plaintiff's own admission, enforcement proceedings of a state court judgment in conjunction with an order of civil contempt are underway and predate Plaintiff's Motion. *See* Proposed Motion (Dkt. 56-1), at ¶16-18. Second, contempt proceedings, like the one at-issue, implicate important state interests. *See Juidice v. Vail*, 430 U.S. 327, 336 (1977) (holding that *Younger* applies to pending state court contempt proceedings). Third and finally, Plaintiff had, and still has, an adequate opportunity to raise these constitutional arguments in the state court proceedings. To invoke the *Younger* abstention, parties "need be afforded only an opportunity to fairly pursue their constitutional claims in the ongoing state proceedings." *Juidice*,

430 U.S. at 337. Further, as is the case with Plaintiff's pending state court litigation, a petitioner can pursue constitutional claims in ongoing state contempt proceedings. *See Ehlers v. Gallegos*, 2020 U.S. Dist. LEXIS 2028, *24 (holding that petitioner, who was seeking *habeas* relief following refusing to pay spousal maintenance and child support, could have raised constitutional challenges to the procedures in the state contempt hearing itself). Plaintiff is able to raise his challenges to the contempt proceedings, which he did in his pending *Motion to Purge or Vacate Contempt*, which is presently being heard by the Circuit Court of Cook County. *See* Proposed Motion (Dkt. 56-1), at ¶16-18. Thus, the present circumstances meet all three requirements necessary for the *Younger* abstention to apply.

Specific to requests for *habeas* relief, Courts have assessed the applicability of the *Younger* abstention doctrine with federal *habeas* proceedings. *See Sweeny v. Bartow*, 612 F.3d 571, 573 (7th Cir. 2010). In *Sweeny*, the Court reviewed a request for *habeas* relief after a state court requested to continue to civilly detain a petitioner who had completed his criminal sentence. *Id.* at 572. The Court noted that the *Younger* abstention doctrine could apply to state proceedings, even if not criminal, to enforce other important state interests. *Id.* at 573. "Civil contempt proceedings *** are just as worthy of protection against being enjoined by federal judges as the other types of noncriminal proceed to which *Younger* has been applied." *Id.* (internal citation omitted). In other words, the *Younger* abstention doctrine applies to cases in which a petitioner seeks *habeas* relief from being in state custody based on contempt. *See Ehlers v. Gallegos*, 2020 U.S. Dist. LEXIS 2028, *22-23 (holding that a petitioner seeking *habeas* relief based on state court contempt hearing procedures falls within the scope of *Younger* abstention). More specifically, proceedings related to a divorce is an area of "significant state concern from which the federal judiciary should generally abstain under *Younger.*" *Ehlers v. Gallegos*, 2020 U.S. Dist. LEXIS 2028, *23-24 (citing *Parejko v. Dunn Cty. Circuit Court*,

209 F. App'x 545, 546 (7th Cir. 2006)).

Here, Plaintiff had a contempt order entered against him following his divorce proceedings after he failed to comply with orders from the Circuit Court of Cook County. *See* Proposed Motion (Dkt. 56-1), at ¶1, 12, 14. After years of litigation and appeals that resulted in his contempt order being affirmed, Plaintiff now has a *Motion to Purge or Vacate Contempt* currently pending before the Circuit Court of Cook County. After being commenced and continued, the next hearing date is set for April 18, 2023. *See* Proposed Motion (Dkt. 56-1), at ¶18. This *currently pending* litigation on Plaintiff's *Motion to Purge or Vacate Contempt* is the precise type of proceeding to which *Younger* applies. Plaintiff's arguments before this Court relating to his ability to comply with the contempt order are substantially similar to those raised and pending before the Circuit Court of Cook County.

Accordingly, this Court should abstain from exercising jurisdiction over Plaintiff's proposed federal claims because they would interfere with pending state court proceedings. *See J.B. v. Woodard*, 997 F.3d at 722. (7th Cir. 2021). Therefore, abstention pursuant to *Younger* is appropriate, and this Court should deny Plaintiff's Motion.

**II.   THIS COURT SHOULD DENY PLAINTIFF'S MOTION BECAUSE PLAINTIFF HAS FAILED TO EXHAUST AVAILABLE ADMINISTRATIVE REMEDIES AND BECAUSE NO FEDERAL LAW HAS BEEN VIOLATED BY HOLDING PLAINTIFF IN CONTEMPT AFTER HIS YEARS OF REFUSING TO COMPLY WITH COURT ORDERS**

To obtain *habeas* relief, Petitioner must satisfy two statutory requirements. *Ehlers v. Gallegos*, 2020 U.S. Dist. LEXIS 2028, *25. First, Plaintiff must establish that "he is in custody in violation of the Constitution or laws or treaties of the United States." *Id.* (*citing* 28 U.S.C. § 2254(a)). Second, Petitioner must show that the state court's resolution on the merits of his claims was either (a) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (b) "based on an unreasonable

10

determination of the facts in light of the evidence presented in the State court proceeding." *Id.* at 25-26. (*quoting* 28. U.S.C. § 2254(d)). Here, Plaintiff is being held in custody pursuant to a state contempt order after Plaintiff's years of attempts to avoid compliance with such order. Further, the state court's findings were not unreasonable and are not in violation of any federal law. Accordingly, Plaintiff is not entitled to federal *habeas* relief, and this Court should deny Plaintiff's Motion.

### a. *Habeas* relief is improper because Plaintiff is not in custody in violation of any federal laws.

To determine whether *habeas* relief is proper, the first inquiry is whether Plaintiff is in custody in violation of the Constitution or laws or treaties of the United States. *See Ehlers v. Gallegos*, 2020 U.S. Dist. LEXIS 2028, *25 (citing 28 U.S.C. § 2254(a)). Specifically, Plaintiff argues that his due process rights have been violated because the length of his incarceration and because the circuit court has not received evidence or made an inquiry "as to whether Fanady could purge himself of the contempt, or whether or not the incarceration had lost its coercive effect and therefore become merely punitive." Proposed Motion (Dkt. 56-1), ¶ 15. However, Plaintiff could have filed a petition for *habeas* relief in the state court contempt proceedings but chose not to. *See Ehlers*, 2020 U.S. Dist. LEXIS 2028, *24 (holding that petitioner could have raised constitutional challenges to the procedures in the state contempt hearing itself). Plaintiff complains to this Court that he was not afforded the opportunity to address the length of his detention but failed to file any related petition or motion in the state court proceeding. Accordingly, any lack of opportunity for these issues to be heard in the contempt proceedings is because of Plaintiff's own failure to request hearing on these issues.

Further, Plaintiff is not in custody in violation of any federal law because the contempt order against him was entered pursuant to facts that had been established through years of litigation, which are presumed to be correct. 28 USCS § 2254(e)(1) (stating that "a determination of a factual issue

made by a State court shall be presumed to be correct" and the applicant "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Specifically, Plaintiff is now being held in custody after years of avoiding compliance with court orders, and he must "now live with the consequences of that decision." *Harnack I*, 2014 IL App (1st) 121424, ¶ 45-46.

Plaintiff's Motion is merely another attempt to avoid complying with the order that requires him to pay his ex-wife. Plaintiff is in custody after his years of delay and evasive tactics finally catching up to him. Accordingly, Plaintiff is not being held in custody in violation of any federal law, and federal *habeas* relief is inappropriate. Therefore, Defendant Dart requests this Court to deny Plaintiff's Motion.

**b. *Habeas* relief is improper because Plaintiff has failed to properly exhaust his available remedies in state court.**

In Plaintiff's Motion, he states that because Plaintiff and Defendant Dart "are both parties to this case, and because the current claims on file and the Habeas Corpus claim both concern [Plaintiff's] incarceration, it is most efficient if the Habeas Corpus claim be brought" in this case. Dkt. 56, ¶ 3. However, this is not the standard. "Before a federal court will consider the merits of a *habeas* petition, the applicant must fairly present any federal claims in state court first, or risk procedural default." *Wronke v. Madigan*, 26 F. Supp. 2d 1102, 1105 (*citing United States ex rel. Walton v. Gilmore*, 1998 U.S. Dist. LEXIS 12680 (N.D. Ill. 1998)). Further, an applicant for *habeas* relief "shall not be deemed to have exhausted the remedies available in the courts of the State *** if he has the right under the law of the State to raise, by any available procedure, the question presented."28 USCS § 2254(c).

Here, Plaintiff has failed to exhaust his available remedies, exhibited by his pending state court litigation. The "pending Illinois state proceedings would afford an adequate opportunity for [Plaintiff] to raise constitutional challenges to the procedures in the contempt hearing itself,"

including filing a state petition for a writ of *habeas* relief. *See Ehlers v. Gallegos*, 2020 U.S. Dist. LEXIS 2028, *24. Plaintiff correctly states that he appealed the finding of indirect civil contempt, which was affirmed by the Illinois Appellate Court in *Harnack IV*, 2022 IL App (1st) 210143, and that his Petition for Leave to Appeal to the Illinois Supreme Court was denied. However, Plaintiff has a pending *Motion to Purge or Vacate Contempt* before the court, which has not concluded and has certainly not been appealed. *Proposed Motion* (Dkt. 56-1), at ¶ 21. Further, Plaintiff could have requested *habeas* relief in those same proceedings, but has failed to do so. Accordingly, Plaintiff has failed to exhaust his available remedies in the Illinois Courts, and his Motion should thus be denied.

      c.  **_Habeas_ relief is improper because the state court's decision was not contrary to established federal law and it wasn't based on an unreasonable determination of the facts of Plaintiff's case.**

To obtain federal *habeas* relief, Plaintiff must show that the state court's resolution on the merits of his claims was either (a) "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (b) "based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Ehlers*, 2020 U.S. Dist. LEXIS 2028, *25-26 (*quoting* 28. U.S.C. § 2254(d)). "In order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be 'objectively unreasonable, not merely wrong; even clear error will not suffice.'" *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017) (*quoting Woods v. Donald*, 575 U. S. 312, 316 (2015)). In other words, Plaintiff would have to show that "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

Here, both the facts and the law support Plaintiff's contempt order and his continued confinement until he complies with the court's orders. Plaintiff argues that he is in "illegal detention"

based on decisions of both the Circuit Court of Cook County and [Defendant Dart] that are "contrary to, and involve an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States." *Proposed Motion* (Dkt. 56-1), at ¶20. Specifically, Plaintiff argues that his due process rights have been violated because the circuit court has not received evidence or made an inquiry "as to whether Fanady could purge himself of the contempt, or whether or not the incarceration had lost its coercive effect and therefore become merely punitive." *Proposed Motion* (Dkt. 56-1), ¶ 15. However, the Court entertained Plaintiff's arguments in the proceedings in which Plaintiff contested his contempt finding. Once the finding was affirmed, Plaintiff has now moved to vacate the order, which is presently pending before the Circuit Court of Cook County. Those proceedings are the correct avenue for Plaintiff to raise these constitutional challenges, which Plaintiff has failed to do. *See Ehlers*, 2020 U.S. Dist. LEXIS 2028, *24.

Regarding the January 5, 2023 hearing on his *Motion to Purge or Vacate Contempt*, Plaintiff makes two arguments that his rights were violated. First, Plaintiff argues that his rights were violated because the January 5, 2023 hearing date was six months and eight days after he was taken into custody. *Proposed Motion* (Dkt. 56-1), at ¶ 17. Second, Plaintiff argues that his rights were violated because the hearing on his *Motion to Purge or Vacate Contempt* commenced on January 5, 2023 but was continued until April 18, 2023. *Proposed Motion* (Dkt. 56-1), at ¶ 18. In support, Plaintiff cites to *In re Marriage Betts*, 200 Ill. App. 3d 26, 57 (1990) for the proposition that "no jail sentence for indirect civil contempt will exceed six months unless the respondent, through his continued recalcitrance, makes it exceed six months." *Betts*, 200 Ill. App. 3d at 57. However, the facts show that Plaintiff has continued his confinement through his own recalcitrance by failing to comply with the Court's order.

Should this Court allow Plaintiff to seek federal *habeas* relief, the inquiry into the merits of Plaintiff's claims will be nearly identical to those in the presently-pending litigation on Plaintiff's

*Motion to Purge or Vacate Contempt* (i.e. Plaintiff's claims that he is being held in custody based on a contempt order for which he cannot comply). However, to reiterate, the pending Illinois state proceedings afford an adequate opportunity for Plaintiff to raise these constitutional challenges, which Plaintiff failed to do. *See Ehlers*, 2020 U.S. Dist. LEXIS 2028, *24.

Plaintiff is attempting to circumvent the orders of the Circuit Court of Illinois, which were entered with support in both merits and law, and have also been affirmed on multiple occasions. Accordingly, Plaintiff's confinement is based on a reasonable determination of the facts of Plaintiff's case and is not contrary to established federal law, and federal *habeas* relief is thus improper. Therefore, this Court should deny Plaintiff's Motion.

## CONCLUSION

Sheriff Dart respectfully requests this Court to deny Plaintiff's *Motion for Leave to File a Petition for a Writ of Habeas Corpus*. Plaintiff's proposed request for federal *habeas* relief is the newest, yet unlikely his final, attempt to avoid complying with lawful orders entered against him. Not only is *Younger* abstention appropriate while Plaintiff's hearing on his requests to vacate or purge the contempt order is still pending, Plaintiff has failed to exhaust his remedies in the Illinois courts. Further, the contempt order does not violate the federal constitution and is supported by years' worths of findings regarding Plaintiff's attempts to hide assets and avoid complying with court orders. Accordingly, Defendant Dart requests this Court to deny Plaintiff's Motion.

Respectfully Submitted,

 */s/ Michael J. Czopkiewicz*
Michael J. Czopkiewicz (Attorney of Record)
O'Mara & O'Callaghan, LLC
230 W. Monroe Street, Suite 2620
Chicago, IL 60606
(312) 600-5588
Michael.C@O2lawyers.com

**CERTIFICATE OF SERVICE**

      I, Michael J. Czopkiewicz, hereby certify that on March 20, 2023, I have caused a true and correct copy of this Motion to be sent via e-filing to all counsel of record in accordance with the requirements regarding the electronic filing and service of documents.

By:    */s/ Michael J. Czopkiewicz*
          Michael J. Czopkiewicz