IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVE FANADY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 22-cv-04180 |
| v. | ) | |
| | ) | Judge Andrea R. Wood |
| THOMAS DART as Sheriff of | ) | |
| Cook County, Illinois, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steve Fanady divorced his ex-wife in 2011. The state court judge presiding over the divorce proceeding awarded his ex-wife 120,000 shares of Chicago Board of Options Exchange ("CBOE") stock. Years later, his ex-wife sought to enforce the judgment. The state court judge ordered Fanady to turn over the shares or their equivalent value: $10 million. Fanady declined, arguing he had neither the shares nor the money. As a result, the state court judge ordered Fanady held at the Cook County Jail ("Jail") for indirect civil contempt. He was first detained in June 2022 and remains at the Jail today. Fanady filed this case asserting a variety of claims related to his detention pursuant to 42 U.S.C. § 1983, seeking money damages and injunctive relief. He has sued only Cook County Sheriff Thomas Dart, in his official capacity. Before the Court is Sheriff Dart's motion to dismiss the First Amended Complaint ("FAC"). (Dkt. No. 33.) For the reasons stated below, the motion is granted as to all but two claims: Fanady's claim that he has been denied shower access and his claim regarding the broken toilet in his cell.

## BACKGROUND

For the purposes of the motion to dismiss, the Court accepts as true all well-pleaded facts in the FAC and views those facts in the light most favorable to Fanady as the non-moving party. *Killingsworth v. HSBC Bank Nev., N.A.*, 507 F.3d 614, 618 (7th Cir. 2007). The FAC alleges as follows.

After Fanady divorced his ex-wife in 2011, the state court judge presiding over the proceedings awarded his ex-wife 120,000 shares of CBOE stock. (FAC ¶ 7, Dkt. No. 24.) Eight years later, she sought to enforce the judgment. (*Id.*) One year after the ex-wife moved for enforcement, the state court judge ordered Fanady to either turn over the 120,000 shares or pay $10 million (the estimated value of the shares) within 14 days. (*Id.*) Fanady did neither. (*Id.* ¶ 8.) As a result, the state court judge found Fanady in civil contempt and, on June 28, 2022, he was taken into custody by Sheriff Dart and detained at the Jail. (*Id.*) As a civil contemnor, Fanady has been ordered to remain in custody until he either turns over the CBOE stock or pays $10 million; however, according to Fanady, he has neither the stock nor the money. (*Id.* ¶ 9.)

While in custody, Fanady has been housed in solitary confinement—first, in a small cell, then, in a small Residential Treatment Unit ("RTU"), and later, in a dormitory-style room large enough to house thirty inmates.[1] (*Id.* ¶¶ 12, 19, 20.) In the RTU, Fanady was subjected to constitutionally inadequate conditions of confinement, including no lights, no laundry service, no exercise or time outside his cell, no medical care, a temperature between 60 and 64 degrees Fahrenheit, and a lack of access to books, magazines, television, or the commissary. (*Id.* ¶ 19.)

---

[1] The Court understands that Fanady has since been moved to yet another location. But for purposes of the motion to dismiss, the Court focuses on the facts alleged in the FAC.

Case: 1:22-cv-04180 Document #: 91 Filed: 09/26/25 Page 3 of 20 PageID #:672

He complained to Jail officials verbally and eventually completed written grievances, after which he was moved into the larger room. (*Id.* ¶ 20.)

There, Fanady continued to be subjected to inadequate conditions of confinement. (*Id.* ¶ 21.) Those conditions included:

- being housed alone and not being allowed outside his cell;
- rat feces on the floor, which attracted insects;
- being denied medical treatment regarding complications from a hip surgery;
- being deprived of recreation or physical activity, which caused his physical health to deteriorate to the point where he can no longer walk unassisted and damaged his mental health;
- being deprived of a bed and instead being forced to sleep on a table;
- lack of toilet or shower facilities that he could use with his declining physical condition;
- only having access to a toilet that backs up when flushed, spilling raw sewage on the bathroom floor;
- not having access to a shower that complies with the Americans with Disabilities Act ("ADA"), which has prevented him from showering for at least seventeen weeks and caused him to develop fungus on his feet and a rash on his legs;
- inmates on the floor above him drilling a hole in the wall, which allowed toxic smoke to seep into his area;
- denial of necessary medications or mental health treatment;
- lack of access to clean laundry; and
- Jail officials rarely providing him a wheelchair and, when they did give him a chair, they would not push him in it.

(*Id.*) Fanady claims that these conditions caused a "marked decline in [his] physical and mental health," most notably causing a lack of mobility that did not arise until his time "in solitary." (*Id.* ¶ 22.)

3

According to Fanady, the conditions about which he complains were caused by Sheriff Dart's willful negligence and deliberate indifference because the Jail is understaffed and does not have the ability to house civil detainees in a separate facility from criminal detainees. (*Id.* ¶¶ 18, 23.) Alternatively, he claims that Sheriff Dart has been "intentionally irresponsible, deliberately indifferent, and has intentionally caused or allowed" the conditions. (*Id.* ¶ 24.) Fanday further alleges that Sheriff Dart puts financial considerations ahead of duties owed to Fanady. (*Id.* ¶¶ 23–24.) Sheriff Dart allegedly demonstrates his deliberate indifference by refusing to put Fanady on the electronic monitoring ("EM") program, which would allow him to satisfy his civil contempt order on home confinement with location monitoring. (*Id.* ¶¶ 26–27.) Fanady alleges that Sheriff Dart has complete authority to place him on the EM program. (*Id.* ¶ 28.)

Additionally, Fanady alleges the existence of a conspiracy directed by his ex-wife's former lawyers. He claims they are directing Jail staff to torture him so that he will comply with the contempt order. (*Id.* ¶¶ 14–17.) The impetus for this alleged conspiracy is that Fanady's ex-wife still owes her attorneys several million dollars from the divorce proceedings. (*Id.* ¶ 14.) One of her former attorneys—who is not identified—allegedly has a close relationship with someone (also unidentified) who works or worked as an executive level manager for Sheriff Dart. (*Id.* ¶ 15.) That person was promoted because of the unnamed lawyer's lobbying. (*Id.*) Another unidentified lawyer, a partner at a law firm that represented Fanady's ex-wife, allegedly owns a security firm that employs current and former employees of Sheriff Dart. (*Id.*) It is not clear whether the partner represented the ex-wife or not. However, Fanady alleges, on information and belief, that his ex-wife's lawyers have leveraged their relationships with Sheriff Dart to "cause the torture" of Fanady so that "they could be paid the substantial amounts they are owed" by his ex-wife. (*Id.* ¶ 17.)

4

As relief, Fanady requests that Sheriff Dart either open a separate facility to house civil detainees or place him on the EM program. He also requests money damages and such other relief as necessary to halt the alleged violation of his substantive due process rights.

## DISCUSSION

Sheriff Dart has moved to dismiss the FAC pursuant to Federal Rule of Civil Procedure 12(b)(1), arguing that the Court lacks subject-matter jurisdiction, and Federal Rule of Civil Procedure 12(b)(6), arguing that Fanady has failed to state a claim.

### I. Categorizing Claims

As an initial matter, Fanady does not sort his claims under clear legal theories, instead raising a scattershot assortment of claims and deferring to the Court to identify corresponding legal theories. But particularly when a complaint covers wide-ranging events, it is important to classify claims because different constitutional violations are analyzed differently; conditions of confinement claims, for example, differ from retaliation claims or claims of deliberate indifference to medical needs. While it is true that a plaintiff need not plead legal theories, *Klein v. George G. Kerasotes Corp.*, 500 F.3d 669, 671 (7th Cir. 2007), Fanady would be well advised to articulate his claims and theories clearly rather than relying on paragraphs with multiple sub-parts asserting facts and conclusions that implicate multiple different theories and multiple groups of defendants. "Judges are not like pigs, hunting for truffles buried in briefs." *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991).

For present purposes, the Court organizes Fanady's claims into six categories. First, he asserts claims regarding the fact of his confinement. (*See, e.g.*, FAC ¶¶ 7–9, 15–17, 26–29.) These consist of his claims challenging his continued confinement based on the civil contempt order and Sheriff Dart's refusal to place him on EM. Second, he asserts claims regarding the manner of his confinement, *i.e.*, that he was illegally placed in solitary confinement. (*See, e.g.*,

5

*id.* ¶¶ 10, 12–13, 19–20.) Third, he raises conditions-of-confinement claims regarding the environment in which he has been housed; this bucket includes things like cell temperature, access to entertainment and exercise, presence of insects or vermin, and the like. (*See, e.g.*, *id.* ¶¶ 16, 18, 21.) Fourth, Fanady raises accessibility claims, such as the lack of showers and toilets accessible to those with limited mobility. (*See, e.g.*, *id.* ¶¶ 2, 21.) Fifth, he asserts claims sounding in deliberate indifference to serious medical needs, alleging that his physical and mental health has deteriorated in the Jail. (*See id.* ¶¶ 21–22.) And sixth, he asserts what appear to be retaliation claims based on an alleged conspiracy between his ex-wife's lawyers and Jail staff and, perhaps, Sheriff Dart himself. (*See id.* ¶¶ 16–17, 26.) Notwithstanding the number and variety of claims, the only defendant is Sheriff Dart, sued in his official capacity.

## II. Subject-Matter Jurisdiction

The Court begins with Sheriff Dart's challenge to subject-matter jurisdiction under Rule 12(b)(1). Sheriff Dart relies on two abstention doctrines that, generally speaking, compel a federal court to dismiss or stay proceedings that implicate an ongoing state case under certain circumstances. First, Sheriff Dart argues that the Court must abstain from exercising jurisdiction over this case pursuant to *Younger v. Harris*, 401 U.S. 37 (1971), which "generally requires federal courts to abstain from taking jurisdiction over federal constitutional claims that involve or call into question ongoing state proceedings." *FreeEats.com, Inc. v. Indiana*, 502 F.3d 590, 595 (7th Cir. 2007). Second, he contends that the Court lacks jurisdiction under the *Rooker-Feldman* doctrine, which "prevents lower federal courts from exercising jurisdiction over cases brought by state court losers challenging state court judgments rendered before the district court proceedings commenced." *Jakupovic v. Curran*, 850 F.3d 898, 902 (7th Cir. 2017) (internal quotation marks omitted).

6

### A. *Younger*

The Seventh Circuit has articulated three "paramount concerns" that must be addressed when considering *Younger* abstention: "(1) the judicial or judicial in nature state proceedings must be on-going; (2) the proceedings must implicate important state interests; and (3) there must be an adequate opportunity in the state court proceeding to raise constitutional challenges." *Barichello v. McDonald*, 98 F.3d 948, 955 (7th Cir. 1996). The federal case also must have not yet held "'proceedings of substance on the merits.'" *Ewell v. Toney*, 853 F.3d 911, 916 (7th Cir. 2017) (quoting *Hicks v. Miranda*, 422 U.S. 332, 349 (1995)). The Supreme Court has held that the principles underlying *Younger* "apply to a case in which the State's contempt process is involved." *Juidice v. Vail*, 430 U.S. 327, 335 (1977); *see also Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 78 (2013).

Sheriff Dart argues that *Younger* applies here because Fanady's divorce proceedings are ongoing and being actively litigated, contempt proceedings implicate important state interests, and Fanady has the opportunity to raise his constitutional arguments in state court. In response, Fanady invokes an exception to *Younger* abstention that applies when "the state proceeding is motivated by a desire to harass or is conducted in bad faith." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611 (1975). The Court first addresses whether the threshold requirements for *Younger* abstention are satisfied before evaluating the propriety of the bad-faith exception.

It is well-established that indirect civil contempt proceedings implicate important state interests for *Younger* purposes, which weighs in favor of abstention. *Juidice*, 430 U.S. at 335. Likewise, the divorce proceeding that gave rise to Fanady's contempt order is ongoing and actively litigated. Fanady's only argument directed toward the three requirements for *Younger* abstention attacks the competency of the state court: "[n]o cook county domestic relations division [sic] judge has the ability, experience, or the time to deal with the complex

statutory and constitutional issues with this exceptional circumstance." (Fanady Resp. at 9, Dkt. No. 35.) This appears to be an argument that the state court does not constitute an adequate forum for vindicating Fanady's constitutional rights. But that position contravenes "[t]he policies underlying *Younger* abstention," most notably comity's "proper respect for state functions." *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 431 (1982) (internal quotation marks omitted). Comity and "[m]inimal respect for the state processes . . . precludes any **presumption** that the state courts will not safeguard federal constitutional rights." *Id.* Thus, the Court grants little weight to Fanady's unsupported conclusion that the state court cannot appreciate the complexity of his constitutional claims.

Moreover, Fanady's claims squarely raise "the potential for federal-state friction." *Simpson v. Rowan*, 73 F.3d 134, 138 (7th Cir. 1995). His fact-of-confinement claims are directly related to the state court's orders in the divorce proceeding. (*See, e.g.*, FAC ¶ 9 ("The Plaintiff continues to maintain that . . . it is impossible for him to comply with the [order].").) Moreover, those claims closely resemble the *habeas corpus* relief Fanady sought and was denied in a separate proceeding in federal court. *See* Order, *Fanady v. Dart*, No. 23-cv-05806 (N.D. Ill. May 5, 2025), Dkt. No. 52.

Fanady's claims based on the manner of his confinement likewise directly implicate the validity of the state court contempt order. Specifically, Fanady primarily argues that Sheriff Dart is improperly applying an Illinois statute and regulation governing detention for civil contempt. Those concerns are squarely directed toward his detention order. Besides, "§ 1983 provides a remedy only for the violation of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States," not the laws of the State of Illinois. *McCready v. White*, 417 F.3d 700, 703 (7th Cir. 2005) (quoting *Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002)). To the

extent Fanady challenges the manner of his confinement based on an alleged violation of Illinois statutes,[2] *Younger* bars his claims.

However, Fanady's remaining claims regarding the conditions of his confinement, accessibility, retaliation, and medical care are not barred by *Younger*. While the state court is available for those claims, they are ancillary to the nature of the state court proceeding. This Court ordering that Fanady be placed on the EM program or finding that the manner of Fanady's detention is inconsistent with Illinois law would directly affect the contempt proceeding, interfering with the state court's control over its own case. But the same cannot be said with respect to Fanady's conditions-of- confinement or medical claims. The risk of federal-state friction is far lower; for example, if the Court were to order that the Jail provide Fanady with more frequent laundry service, it would not undermine or conflict with the underlying contempt order. Rather, it would affect only his day-to-day life at the Jail.

Fanady argues that regardless of whether *Younger* abstention is warranted, the doctrine should not apply because the state court proceedings were brought in bad faith. *Huffman*, 420 U.S. at 611. But to plead bad faith adequately, Fanady must present "specific facts to support [his] inferences of bad faith, bias, and retaliation. [He] must present more than mere allegations and conclusions." *Crenshaw v. Sup. Ct. of Ind.*, 170 F.3d 725, 729 (7th Cir. 1999). And he has failed to do so. Instead, Fanady alleges on information and belief that unnamed members of the Sheriff's department are employed by unnamed former counsel for Fanady's ex-wife; that the

---

[2] In addition, the statutes Fanady invokes provide only that contemnors should not be housed "in the same room with other prisoners," 730 ILCS 125/11, and that they should "be kept separate by cell or detention room from detainees charged with criminal offenses," 20 ILAC § 701.70(b)(4)(A). That is exactly how he alleges he has been housed. The regulation does state that "[w]hen possible," indirect civil contemnors "shall be kept separate by detention room cluster or cell block from detainees charged with criminal offenses." 20 ILAC § 701.70(b)(4)(B). But Fanady does not cite that subsection or allege that such separation is possible.

former counsel has yet to be paid by his ex-wife and is under the mistaken impression that Fanady can be coerced into fulfilling the obligations set upon him by the divorce court; and that Fanady's ex-wife's former counsel is conspiring with Sheriff Dart and his unnamed employees to torture Fanady into paying his ex-wife so that she can pay her former counsel. Fanady offers no specific facts to support these conclusions, instead speculating that an elaborate conspiracy is the most reasonable manner by which Fanady's ex-wife's counsel expect to be paid. The Court disagrees—at the very least, Fanady must provide names and facts to plausibly allege this chain of relationships. Instead, Fanady expressly states that he has chosen *not* to provide names and specific events in seeking to allege bad faith. (Fanady Resp. at 8 n.5.)

To sum up, the Court abstains from exercising jurisdiction over Fanady's claims challenging the fact of his confinement and the manner of his confinement. Those claims are dismissed without prejudice pursuant to *Younger*. But the Court finds that *Younger* provides no impediment to the Court exercising jurisdiction over Fanady's claims relating to the conditions of his confinement, his accessibility issues, deliberate indifference to his medical needs, and retaliation.

      **B.**    *Rooker-Feldman*

The *Rooker-Feldman* doctrine "provides that lower federal courts do not have subject-matter jurisdiction to review state court civil decisions." *Edwards v. Ill. Bd. of Admissions to Bar*, 261 F.3d 723, 728 (7th Cir. 2001) (citing *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923) and *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983)). When faced with an adverse state court decision, parties must instead "seek review through the state court system and, if necessary, petition the United States Supreme Court for a writ of certiorari." *Id. Rooker-Feldman* bars suits in two instances: (1) when a plaintiff seeks to "overturn an adverse state court judgment," and (2) when a plaintiff raises federal claims "that were not raised in state court or do not on their face

require review of a state court's decision" but nonetheless are "inextricably intertwined with a state court judgment." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012) (internal quotation marks omitted).

Sheriff Dart argues that *Rooker-Feldman* bars Fanady's suit to the extent he seeks review of his state court contempt order and body attachment. The Court agrees, and *Rooker-Feldman* provides a basis independent of *Younger* to bar Fanady's fact-of-confinement and manner-of-confinement claims. His request for EM directly undermines the state court's contempt order, as do his allegations that the order itself is invalid. In arguing that his federal claims are not inextricably intertwined with the state court proceedings, Fanady largely ignores that *Rooker-Feldman* also bars suits that seek review of state court judgments. He argues that he is not asking for any state court order to be modified or vacated, but instead "is asking that he be put on [EM] house arrest or [be] released." (Fanady Resp. at 12.) But the Court fails to see how altering the terms of his confinement or releasing him outright does anything other than modify or vacate the state court judgment.

### III. Merits of Remaining Claims

The Court next considers whether Fanady's remaining claims over which it may exercise subject-matter jurisdiction state a viable claim for relief. To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual allegations, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This pleading standard does not necessarily require a complaint to contain detailed factual allegations. *Twombly*, 550 U.S. at 555. Rather, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Adams v. City of Indianapolis*, 742 F.3d 720, 728 (7th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678).

As noted above, the only defendant in this case is Sheriff Dart, sued in his official capacity. "Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, the entity's policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks omitted). This means Fanady must plead facts sufficient to sustain a claim under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Under *Monell*, a defendant may be held liable for three types of municipal action: "(1) an express policy that causes a constitutional deprivation when enforced; (2) a widespread practice that is so permanent and well-settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 235 (7th Cir. 2021) (internal quotation marks omitted). But "the plaintiff must begin by showing an underlying constitutional violation." *Schor v. City of Chicago*, 576 F.3d 775, 779 (7th Cir. 2009).

### A.  Conditions of Confinement

To rise to the level of a constitutional violation, a plaintiff's conditions of confinement must be objectively serious. *Smith v. Dart*, 803 F.3d 304, 309–10 (7th Cir. 2015). The majority of Fanady's alleged claims do not meet this threshold. He alleges the presence of rat feces and insects, but "alleging the presence of a laundry list of pests, without more, is not sufficient to state a constitutional claim." *Id.* at 312. For example, Fanady does not allege that the insects have caused him physical harm or that he suffers some injury from the presence of rat feces. Likewise, Fanady alleges that he has not been allowed adequate exercise. But he is housed in a dormitory large enough for thirty inmates, and he does not allege any facts that support a plausible inference that "movement is denied and muscles are allowed to atrophy and the health of the individual is threatened." *Id.* at 313 (internal quotation marks and alterations omitted). True,

Fanady claims that his physical condition has deteriorated, but he does not point to any alleged policy or lack thereof that prevents him from moving or exercising.

Fanady also alleges that he has been exposed to toxic smoke. He states that this has injured him, but only states that as a conclusion without pleading any facts that plausibly suggest injury. For instance, he does not allege that the smoke causes him to cough, irritates his throat, or causes him any sort of physical harm. He does not allege what causes him to believe the smoke is toxic as opposed to, for example, cigarette smoke. As such, his allegations do not rise to the level of a constitutional violation. *See Jackson v. Dart*, No. 22 C 1685, 2025 WL 2147257, at *7 (N.D. Ill. July 29, 2025) ("For problems with ventilation to satisfy the objective prong of an unconstitutional conditions claim, there must be evidence of a 'direct physical manifestation of the harm caused by the poor ventilation, as well as the quite likely possibility for future health problems.'" (quoting *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2025))). Likewise, having to sleep on a mattress on a table is not inherently an objectively serious condition. It is not clear what he means when he alleges that he must sleep on a table due to an improperly provided bed. Nor is lack of clean laundry, in and of itself, an objectively serious condition.

The only objectively serious conditions that Fanady has adequately pleaded is the toilet in his cell, which backs up when flushed and spills raw sewage on the floor, and his lack of shower accommodations, which has led to him going many weeks without a shower, during which time he developed fungus on his feet and a painful rash between his legs. Sheriff Dart argues that Fanady has not alleged why he cannot use the facilities, what steps he has taken to request accommodations, or how any policy or practice of the Jail has prevented him from obtaining accommodations. And Fanady does not respond to that argument. But the nature of the two claims raises a strong inference of knowledge by Jail staff of the conditions and that they are

13

objectively serious. It may not be objectively serious for an inmate to limit himself to four showers a month due to difficulty using the facilities. *Dennis v. Curran*, No. 16 C 6014, 2017 WL 264497, at *6 (N.D. Ill. Jan. 20, 2017). But this case is far graver than that: at least seventeen weeks without a single shower and a floor covered in raw sewage both raise objectively serious conditions.

      Under *Monell*, Fanady must also allege a widespread policy or a deliberate act of a policymaker that was the moving force behind his injuries. *Grieveson v. Anderson*, 538 F.3d 763, 771 (7th Cir. 2008). The policy to which Fanady points, though, has to do with the fact that the Jail does not have a separate facility for civil detainees. This is entirely unrelated to his complaints about lack of shower accommodations and a malfunctioning toilet. Nor does he allege that Sheriff Dart deliberately withheld a shower from Fanady or intentionally refused to fix his toilet. Instead, Fanady relies on his own experience, which requires adequate allegations to "allow[] the Court to draw the reasonable inference that the municipality 'maintains the problematic policy or practice in question.'" *Arquero v. Dart*, 587 F. Supp. 3d 721, 730 (N.D. Ill. 2022) (quoting *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011)). Fanady has met this pleading standard.

      That an inmate has gone at least 17 weeks without a shower raises a reasonable inference that there is a widespread practice of inaction. Likewise, that a toilet could seep sewage onto the floor with each flush calls into question why the toilet was not fixed or alternative accommodations secured. Each of these plausibly involves a number of people—for example, Fanady argues that his detention requires three extra shifts of guards—and the fact that numerous Jail employees encountered these conditions and failed to act implies, for purposes of a motion to dismiss, that there is a widespread policy or practice of inaction. As such, Dart's motion to

dismiss is denied only as to these two conditions of confinement claims, and granted as to the remainder.

### B. Medical Claims

Fanady also asserts a claim that Sheriff Dart has been deliberately indifferent to his medical needs. Claims of inadequate medical care for a civil detainee are analyzed under the Fourteenth Amendment, which applies the same standards as the Eighth Amendment. *McGee v. Adams*, 721 F.3d 474, 480 (7th Cir. 2013). Fanady must allege both an objectively serious medical need and Sheriff Dart's deliberate indifference to that need. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005). A deliberate indifference claim against Sheriff Dart, who is not a Jail healthcare provider, is permissible if Sherrif Dart "ha[d] a reason to believe (or actual knowledge) that prison doctors [we]re mistreating (or not treating) [him]." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011) (internal quotation marks omitted). Sheriff Dart may also be liable under *Monell* if he maintained policies that prevented adequate medical care.

"A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. A wide range of conditions qualify, "including a dislocated finger, a hernia, arthritis, heartburn and vomiting, a broken wrist, and burns sustained from lying in vomit." *Roe v. Elyea*, 631 F.3d 843, 861 (7th Cir. 2011). At bottom, the medical complaint must involve something that "significantly affects an individual's daily activities[] or the existence of chronic and substantial pain." *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) (internal quotation marks omitted).

It is not entirely clear which medical needs Fanady relies on for his claim, but only some meet the standard. Generally, he pleads the presence of conditions but nothing about their gravity. For example, he alleges that he had "complications resulting from his recent double hip

15

replacement surgery," (FAC ¶¶ 19(e), 21(e)), but gives no indication of what those complications are, let alone how serious they are. If the claim regarding toxic smoke is a medical claim, Fanady gives no indication of how it injures him. (*Id.* ¶ 21(k).) The only medical needs he alleges that potentially rise to the level of objective seriousness are his inability to walk without aid (*id.* ¶ 21(f)), the refusal to provide him with necessary medication (*id.* ¶ 21(l)), and the lack of mental health treatment (*id.* ¶ 21(m)).

But Fanady does not adequately allege Sheriff Dart's knowledge of those needs. He alleges in a conclusory fashion that Sheriff Dart "has been willfully negligent and deliberately indifferent to the conditions and circumstance" of Fanady's confinement. (*Id.* ¶ 23.) He alternatively alleges, on information and belief, that Sheriff Dart's indifference is intentional. (*Id.* ¶ 24.) At no point does he allege any fact from which the Court can plausibly infer that Sheriff Dart is actually aware of his medical needs. Simply stating that Sherrif Dart is negligent does not suffice. Moreover, Fanady does not allege a specific harm arising from the conditions that satisfy the seriousness standard. "[A]bsent any concrete or particularized allegation of harm, this Court cannot provide relief." *Hamilton v. Gavin*, No. 22 C 02285, 2023 WL 2161663, at *6 (N.D. Ill. Feb. 22, 2023). As such, the only theory Fanady may invoke regarding his medical claims is a *Monell* theory.

Under *Monell*, the question is whether Fanady has alleged that Sheriff Dart maintains a policy or practice that was the moving force behind his three objectively serious medical needs: inability to walk without aid, lack of necessary medication, and unavailability of mental health treatment. Regardless of whether he has done so—and it is by no means clear that he has, given the barebones nature of his allegations and the lack of well-pleaded facts about any other

16

inmate's medical care—Fanady has not alleged that Sheriff Dart's policy is the moving force behind his injuries.

As to medication, Fanady gives no indication of what his medication is or how its absence has harmed him. Without a harm, there is no causal link between an injury and Sheriff Dart's policy, let alone support for a plausible inference that Sheriff Dart's policy was the moving force behind this unstated harm. Fanady relies on *Daniel v. Cook County*, 833 F.3d 728 (7th Cir. 2016), and its use of a Department of Justice report as evidence, to support his allegations that there is a widespread practice of deprivation of medical care. But he simply invokes the report and states that it shows the Jail's history of inadequate healthcare. *See Arquero*, 587 F. Supp. 3d at 730 ("[T]he existence of other lawsuits, without more, does not shed much light on the underlying facts."). Generally alleging inadequate medical care as found in another lawsuit does not state facts showing a policy or practice of withholding necessary medication.

Additionally, Fanady does not point to any particular provision of the report that supports his claim, and "it is not this Court's job to sift through the record and make the case for a party." *Conwell v. Johnsen*, No. 12 C 10062, 2016 WL 6661169, at *22 n.11 (N.D. Ill. Nov. 9, 2016) (internal quotation marks omitted). Fanady only raises the report in his briefing; on the face of his complaint, the only allegation of widespread policy is an offhand allegation in his preliminary statement that there is a Jail policy. (FAC ¶ 1.) The policies Fanady alleges that Sheriff Dart carries out have to do with not having a separate facility for civil detainees (*id.* ¶ 20), and a conclusory allegation that, on information and belief, Sheriff Dart intentionally caused the deterioration of Fanady's health (*id.* ¶ 21). Without any facts that speak to the

presence or absence of a widespread policy that robs inmates of adequate medical care, however, Fanady cannot survive Sheriff Dart's motion to dismiss.

Fanady also relies on his own experience for his inability to walk without aid and lack of mental health care. His mental health claim is too boilerplate to survive a motion to dismiss. He simply alleges that he "is not being provided with treatment for his deteriorating mental health." (FAC ¶ 21(m).) He does not allege that he has requested or sought mental health treatment. He seems to allege that Jail staff should infer from his detainment that mental health issues will arise and should proactively provide him with treatment. It is not possible to glean a widespread practice of denying mental health treatment from Fanady's allegations. Similarly, Fanady does not allege that he has requested assistance walking or directly sought accommodations—outside of possibly implying that he has been assigned a wheelchair. (*Id.* ¶ 21(o).) But Fanady's failure to allege other instances that lead to an inference of a widespread policy is, once more, insufficient to state a *Monell* claim. *See, e.g.*, *Sims v. Cook County*, No. 15 C 1094, 2016 WL 1392322, at *2 (N.D. Ill. Apr. 8, 2016) (dismissing a *Monell* claim regarding provision of crutches or a wheelchair because the plaintiff failed to allege other incidents).

For these reasons, Fanady's claims sounding in deliberate indifference to his medical needs are dismissed without prejudice.

### C. Conspiracy to Retaliate

Finally, Fanady appears to allege retaliation claims based on a conspiracy between his ex-wife's lawyers, Sheriff Dart, and Jail staff. "To establish conspiracy liability in a § 1983 claim, the plaintiff must [allege] that (1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). As alleged, the lawyers are owed money from the divorce proceedings and they expect to be paid out of the money collected from

18

Fanady by his ex-wife. One unnamed lawyer is allegedly close friends with a deputy who was promoted to an executive-level position under Sheriff Dart because of this lawyer's lobbying. Additionally, an unnamed partner in a law firm that represented his ex-wife after the divorce allegedly owns a security firm that employs current and former Sheriff's Office employees; it is not clear whether this partner did any work for the ex-wife or not. According to Fanady, the lawyers have used their relationships with Sheriff Dart and his employees to torture Fanady into complying with the contempt order and paying the money to his ex-wife so that the lawyers can collect their fees.

These claims fail because Fanady's allegations are too skeletal. He does not name the law firm, the lawyers, or the Sheriff's Office employees. It is not clear whether any of the employees allegedly torturing Fanady are those who are employed by the law firm partner, or whether they are otherwise unaffiliated with this partner but are directed to torture Fanady by Sheriff Dart or by someone else in the Jail. Fanady cannot adequately allege a conspiracy simply by stating that there is one. True, "it is enough in pleading a conspiracy to merely indicate the parties, general purpose, and approximate date, so that the defendant has notice of what he is charged with." *Walker v. Thompson*, 288 F.3d 1005, 1007 (7th Cir. 2002). But Fanady has not alleged "who, what, and when." *Hill v. Cook County*, 463 F. Supp. 3d 820, 840 (N.D. Ill. 2020). Thus, any retaliation claims based on a conspiracy—which, as best the Court can tell, is all of his retaliation claims—are not adequately pleaded.

**CONCLUSION**

For the reasons set forth above, Sheriff Dart's motion to dismiss (Dkt. No. 33) is granted in part and denied in part. Fanady's conditions of confinement claims relating to shower accessibility and an overflowing toilet survive. All remaining claims are dismissed without prejudice. With the exception of those claims over which the Court cannot exercise jurisdiction

19

as stated above, Fanady may seek leave to file an amended complaint that cures the pleading deficiencies of the claims dismissed without prejudice.

ENTERED:

Dated:  September 26, 2025

Andrea R. Wood
United States District Judge